# Staunton.

TOWN OF GLASGOW AND OTHERS v. MATHEWS AND OTHERS.

September 20, 1906.

Absent, Buchanan, J.

1. STREETS AND HIGHWAYS—*Dedication—Abandonment—Case at Bar.*— Although the act of a development company organized for the purpose of erecting a city, in platting its land and including it within the limits of the proposed city, may constitute a dedication to the public of the avenues, streets and alleys designated on the plat, yet so far as streets not actually opened are concerned, the dedication is inchoate merely, and may be abrogated by subsequent events. In the case in judgment, the failure of the general purpose of the dedication, and the sale and purchase of the land with a view to changed conditions, coupled with the continuous failure of the public for many years to open and maintain the streets in controversy, together with the systematic diversion of the land included in them to uses foreign to the dedication, furnish unmistakable evidence of their abandonment.

2. STREETS AND HIGHWAYS—*Abandonment—Opened and Unopened Streets.*—A municipal corporation may lose its right to land dedicated for streets by abandonment, as where it fails for many years to open the streets and permits the land to be used for other purposes; but the case is different as to thoroughfares which have been opened and maintained by the public. In such case the dedication has become consummated and the rights of the public vested, and ought not be disturbed.

3. MUNICIPAL CORPORATIONS—*Eminent Domain—Construction of Charter.*—A provision in a town charter that the town council shall have the same jurisdiction for condemning lands for streets and alleys of said town as the county court has for condemning lands for roads in the county does not constitute the town council a judicial tribunal and invest it with plenary power to exercise the right of eminent domain and condemn private property for its own purposes, but merely confers jurisdiction upon the council to institute condemnation proceedings in the appropriate court and in accordance with the general statutes on the subject.

4. STATUTES—*Construction.*—It is a cardinal rule of interpretation that in construing a doubtful statute that construction should be adopted which is conformable to the Constitution.

Appeal from a decree in chancery of the Circuit Court of Rockbridge county. Decree for complainants. Defendants appeal.

*Modified and affirmed.*

The opinion states the case.

*Hugh A. White,* for appellants.

*John G. Haythe,* for appellees.

WHITTLE, J., delivered the opinion of the Court.

The appellees are the owners of a considerable boundary of land within the corporate limits of the town of Glasgow, lying in the fork of James and North rivers, and extending from the river banks to a course represented by a red line on a map of the town prepared by the Rockbridge company and exhibited with appellees' bill. It is matter of local history that Glasgow was a product of the "boom" of 1890, and that it was the dream of its projectors, the development company, to erect a city at the junction of those streams. It was with that purpose in view that the company was organized, and, having purchased a large area of land in the angle formed by the rivers, it proceeded to lay off a city on paper consisting of several hundred squares interspersed with villa sites, parks and other public places, and intersected by miles of prospective avenues, streets and alleys. This map was recorded in the clerk's office of the County Court of Rockbridge county, and Glasgow was incorporated in February, 1892. About that time the "boom" collapsed, and the Rockbridge company becoming irretrievably insolvent was, at the suit of creditors, placed in the hands of receivers by an order of the Circuit Court of the United States for the Western Dis-

trict of Virginia. Its property was sold under decrees in that case, and the tract of land in question was purchased by the predecessors in title of the appellees. Thus the scheme for building a city at Glasgow resulted in utter failure; and at the present time the town consists of a straggling village, scattered over the site of the proposed city.

Even prior to the adjudged insolvency of the Rockbridge company, its officers, realizing the hopelessness of the venture, proceeded to fence portions of its property without regard to the imaginary streets shown on the map, and to rent them for agricultural purposes. This policy was also pursued by the receivers after their appointment, until the sale of the property in 1896. It further appears that since the organization of the town under its charter, in the summer of 1898, the authorities have inclosed the ground occupied by many of these intended thoroughfares, and have systematically leased them as a source of revenue for the maintenace of the municipal government. While the major part of the appellees' holding was, like the residue of the company's property, laid off on the map in blocks and streets, the portion lying contiguous to the rivers was not so platted, but was reserved in a body as sites for manufacturing enterprises. This is apparent from an inspection of the map, which also shows that the reserved territory marks the termini of the streets toward the river front. It moreover appears that while a great number of the alleged streets were laid off on the map of the land company with a view to conditions which utterly failed to materialize, nevertheless, some of those highways (notably "Blue Ridge road") were in good faith accepted, opened and maintained by the public, and are essential to the present needs of the town of Glasgow, and to close them at this time would inflict irreparable injury upon that community.

The foregoing narrative sets forth in brief outline the facts and circumstances which led up to the present controversy. The litigation involves the right of the appellants to open for public use such portions of the highways, actual and projected,

as extend into the land owned by the appellees, and by virtue of its charter to prolong those streets through the land of appellees to the banks of the rivers. The town council had caused the fences of the appellees which obstructed the streets in dispute to be destroyed, and by virtue of section 11 of the charter had appointed commissioners to go upon their land and assess damages for the proposed street extensions; whereupon appellees obtained an injunction from the judge of the Circuit Court of Rockbridge county restraining the appellants from interfering with their fences or from otherwise trespassing upon their property, and also from further proceedings to condemn the same for streets.

Upon a final hearing of the case, the Circuit Court perpetuated the injunction and awarded costs against the appellants. From that decree this appeal was granted.

If we admit as an abstract proposition of law the soundness of the contention that the act of the Rockbridge company in causing a map to be made of their land, which was subsequently embraced within the corporate limits of the town of Glasgow, constituted a dedication to the public of the avenues, streets and alleys designated thereon, it is nevertheless true that so far as the unopened streets are concerned the dedication was inchoate merely, and has been abrogated by subsequent events. The general purpose of the dedication has failed; the property has been sold and purchased with a view to changed conditions; and these circumstances, coupled with the continuous failure of the public during all these years to open and maintain these streets, together with the systematic diversion of the land included in them to uses foreign to the dedication, all furnish unmistakable evidence of their abandonment.

In the case of *Scott* v. *Moore,* 98 Va. 668, at page 687, 37 S. E. 342, 81 Am. St. Rep. 749, this court held: "A party entitled to a right of way or other mere easement in land may abandon and extinguish such right by acts *in pais* and without deed or other writing; and a cessation of the use, coupled with

any act indicating an intention to abandon the right, would have the same effect as an express release of the easement without any reference to time." Citing *Vogeler* v. *Geiss,* 51 Md. 408.

In the case of *Oney* v. *West Buena Vista Land Co.,* 104 Va. 580, 52 S. E. 345, the court observes: " . . . and a failure to do this (to keep the bridge across North river in repair) for an unreasonable length of time would amount to an abandonment of the easement, as an abandonment will be presumed when the owner of the right does, or permits to be done, any act inconsistent with the future enjoyment of the right."

It is manifest that a different conclusion with regard to unopened streets would not only work great injustice to present holders of property within the corporate limits of the town, but would likewise impose upon a small community an impossible burden.

"It is not doubted that it is within the power of the 'Legislature to compel governmental corporations to assume the burden of maintaining public ways laid out by individuals pursuant to the provisions of the statute, but it is a power to be carefully guarded, for the public ought not to be burdened with the maintenance of ways laid out by individuals to gratify their whims or promote their selfish interests. The closer the adherence to the rule requiring an acceptance on the part of the public the better for the public interests. A rule which is in itself a wise one and in close analogy with the fundamental principle that one party cannot be bound without his assent—a principle which has proved salutary in its practical operation—should be departed from only in the clearest cases and upon the most imperious necessity." Elliott on Roads & Streets (1st Ed.), page 87.

But the case is different as to thoroughfares which have been opened and maintained by the public. For in such instance the dedication has become consummated and the rights of the public vested, and they ought not to be disturbed.

As remarked, the proceedings to condemn appellees' land

were had under section 11 of the charter, which provides: "The council of said town shall have the same jurisdiction for condemning lands for streets and alleys of said town as the County Court has for condemning lands for roads in the county."

The pretension of the appellants is that this enactment constitutes the council a judicial tribunal and invests it with plenary power to exercise the right of eminent domain and condemn private property for its own purposes.

We are disposed to construe the clause otherwise, and to hold that it merely confers jurisdiction upon the council to institute and prosecute condemnation proceedings in the appropriate court and in accordance with the general statutes on the subject, which fully prescribe the procedure and afford an ample remedy for the exercise of the right.

It is a cardinal rule of interpretation that in construing a doubtful statute that construction should be adopted which is conformable to the Constitution. To adopt the construction of the appellants would violate the rule of universal application that no one ought to be a judge in his own case, and would also bring the section in conflict with the theory and policy of the government of this State, which demand that the legislative, executive and judicial departments shall be kept separate and distinct. Virginia Constitution, Article II, section 5.

It follows from what has been said that the decree appealed from must be modified, in so far as it deprives the appellants of the use and enjoyment of such of the streets and highways in controversy as have been opened and continuously used by the public, or have not been abandoned as public easements by non-user, or otherwise, and for the more definite ascertainment of these thoroughfares the case will be remanded to the Circuit Court for further proceedings. In all other respects the decree is affirmed.

*Modified and affirmed.*