## Richmond

## TOWN OF BASIC CITY V. BELL.

### November 21, 1912.

1. DEDICATION—*When Complete—Subsequent Obstructions.*—When the intention of the owner of land to dedicate it to a public street has been unequivocally manifested, and there has been an acceptance by competent authority, the dedication is complete; and when complete it is irrevocable. No obstruction of the subject of dedication or encroachment upon it by the original owner of the soil, or any one else, will affect the dedication or impair the right of the public to its benefits, unless the land so dedicated has been abandoned by the public or by the proper authority.

2. DEDICATION—*Abandonment—Burden of Proof.*—Where the dedication of a street is complete, the burden of showing a discontinuance, vacation or abandonment of the street is upon the party who asserts it.

3. MUNICIPAL CORPORATIONS—*Streets—Delay in Opening—Non-User—Abandonment.*—Delay by a municipality in opening a street, which has been expressly dedicated and expressly accepted, is not an abandonment thereof, except so far as statutory or charter provisions fix a rule to the contrary. Nor is a mere non-user of a portion of a street fenced in with abutting property an abandonment of the street by the public. Some private use of the public way is not unfrequently accorded to abutting owners until the public use requires its surrender.

4. MUNICIPAL CORPORATIONS—*Streets—Recorded Maps—Notice—Encroachments.*—Where the boundary lines of the streets of a town are clearly and fully disclosed by a duly recorded map, subsequent purchasers of lots abutting on such streets are charged with notice of the location of the street lines, and the fact that lots abutting on the streets were bought and sold with reference to fences which encroached upon the street will not affect the public right unless the town has done some affirmative act to mislead them. .

5. MUNICIPAL CORPORATIONS — *Abandonment — Non-User — Encroachments.*—Where there has been complete dedication of a street in a town, the mere failure of the town to improve the street

and to object to encroachments upon the street by abutting owners for a period of less than twenty years, does not show that the town has abandoned the street, or any part of it.

6. MUNICIPAL CORPORATIONS — *Streets — Encroachments — Estoppel.*— Where there has been no abandonment of the public use of a street of a town for the prescriptive period, and the town has done no affirmative act to induce abutting owners to change their positions for the worse, the town is not estopped to claim the full width of the street, as previously established, even if the doctrine of equitable estoppel in a case of this kind is applicable in this State.

7. MUNICIPAL CORPORATIONS — *Closing Streets — Damages — Opening Street After Action Brought.*—Where the gravamen of an action to recover damages from a town is the destruction of a street which furnished the only means of ingress and egress to and from the plaintiff's property, it is competent for the town to show that after the institution of the action, it had opened and put into use another street, which furnished the plaintiff as good, or a better, way of ingress and egress than he had before. Such evidence is not in mitigation of damages, but in proof of the actual amount of damages suffered by the plaintiffs, showing that the injury complained of was not permanent, but temporary only.

Error to a judgment of the Circuit Court of Augusta county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Quarles & Pilson,* for the plaintiff in error.

*R. W. Crowder* and *Timberlake & Nelson,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Winston Bell brought his action of trespass on the case to recover damages from the town of Basic City for

injuries alleged to have been done to his property situated on Riverside Drive in the said town, and known and designated on the official map of the town as lot No. 13, and the southern half of lot No. 12 in block No. 223, and upon which had been erected a dwelling house.

The declaration, which contains two counts, charges in the first count, that in the year 1910 the defendant town, for the purpose of securing water power for the operation of its municipal street lighting plant, constructed in South river at a point a short distance in front of and almost directly opposite the plaintiff's house and lots a large dam, and from said dam constructed a canal or race, extending from the river to its electric plant, about five hundred yards north of its dam. After alleging that it was the duty of the defendant to exercise ordinary care in the construction and maintenance of the dam and canal so as not to injure the plaintiff's property, it is charged that it failed to exercise such care, and that it so negligently and carelessly constructed the dam and canal that they caused the water from the river to overflow and be deposited upon this property, whereby and by means of which foul and stagnant pools of water are created and left upon his premises, and in time of high water is so inundated that it is impossible for him to use and enjoy portions thereof.

The wrongful act charged in the second count is that the defendant, in violation of its duty, carelessly and negligently constructed the canal or race along and over Riverside Drive, upon which plaintiff's property abutted, and over his premises, so that he had been totally deprived of that street and of a portion of the front of his land.

The defendant pleaded not guilty, and upon the trial of the cause there was a verdict and judgment for the plaintiff. To that judgment this writ of error was awarded.

Fourteen errors are assigned in the petition for the writ, but, as stated in the plaintiff's brief and conceded in the petitioner's reply brief, there are really but two questions involved here, viz: (1) Did the court err in giving instruction No. 1 offered by the plaintiff and in refusing to give the defendant's instruction No. 4, both as to the boundary line of the street known as Riverside Drive; and (2) Was it competent for the defendant to show the establishment and opening of Canal street for public use after the institution of the plaintiff's action, as a way of egress and ingress from and to his property, in mitigation or reduction of damages?

As to the first question: The instructions involved are as follows:

No. 1. "The court instructs the jury that if they believe from the evidence in this case that the street in front of the plaintiff's property, known and designated as Riverside Drive, was never from the time of its dedication down to the time of the commencement of this suit open to public use, and that the plaintiff and other lot owners abutting on said street for some years prior to the commencement of this suit maintained fences between their lots in said street, without objection on the part of the defendant or any person, and that said properties were bought and sold with a view to the changed conditions, then said street must be considered as extending in width only from the line of said fences as its western boundary to the bank of the river as its eastern boundary."

No. 4. "The court instructs the jury that the eastern boundary line of the plaintiff's property, designated as lot No. 13, and the southern half of lot No. 12, in block No. 223, according to the map of the town of Basic City, introduced in evidence, fronting on Riverside Drive, and as shown on said map, is the true eastern boundary line of said property."

It appears that in November, 1890, the Basic City Mining and Manufacturing, &c. Company had a map of its lands made and recorded in the clerk's office of the County Court of Augusta county in accordance with the provisions of section 1014 of the Code of 1887. In January, 1891, the following action was taken by the town of Basic City:

"At a meeting of the council of the town of Basic City, held on the 4th day of January, 1891, it was resolved: First, That the dedication of the streets, alleys and highways as indicated by and designated in the 'Map of Basic City, Augusta county, Va., November 1, 1890—By D. C. Humphreys, Prof. Eng. Washington and Lee University, Lexington, Va.,' to the use of the public, as streets, alleys and highways of the town of Basic City, as made by resolution of the board of directors of the Basic City Mining Manufacturing and Land Company passed on the 29th day of December, 1890, be accepted upon the terms and conditions expressed in said resolution.

"Second: It appearing that the said map is a survey and plan of the town of Basic City showing the corporate limits of said town as well in outline as by metes and bounds, and further show distinctly each lot, public street and alley therein, the size and number of the lots and the width of the streets and alleys, with such explanations and remarks as the council deem proper, it is further resolved that said map, together with the said resolution of the board of directors of the Basic City Mining Manufacturing and Land Company be entered in one of the books of this council and be afterwards, together with a copy of said resolution of the board of directors of the Basic City Mining Manufacturing and Land Company and a copy of this resolution, recorded in the clerk's office of the County Court of Augusta county in accordance with the provisions of Sec. 1014 of the Code of Virginia (1887)."

There is nothing in the terms and conditions of the resolution of the Basic City Mining Manufacturing and Land Company which affects the question now under consideration. It further appears—indeed, the declaration of the plaintiff so states—that the plaintiff's property is "situated within the corporate limits of the town of Basic City, fronting a certain public street in said town known as Riverside Drive * * *; the said property being known and designated on the official map of Basic City (which said map is of record in the office of the county clerk of Augusta county * * *) as lot No. 13, and the southern half of lot 12 in block 223." It further appears that when the wrongs complained of were done, Riverside Drive was used by the lot owners abutting thereon and by the public in going to and from the plaintiff's property, and that at that time he had no other outlet to his property. It also further appears that while Riverside Drive was open for the use of the abutters thereon and the public who wished to travel it, the defendant town had never improved the street or paid any attention to it. There was evidence tending to prove that the properties abutting on it, including the plaintiff's, were bought and sold with the fences standing in front of them and the space between such fences and the river used as a street; that the defendant town had never at any time objected to the location of such fences, and did not assert any claim until after the plaintiff brought his action that the said fences encroached upon the street. One of the contentions of the defendant was that the fence in front of the plaintiff's property encroached upon the street ten or eleven feet. The plaintiff, on the other hand, insisted that the fence did not encroach upon the street, or if it did, that since the street known as Riverside Drive was never from the time of its dedication down to the commencement of the plaintiff's action opened by the defendant for public use, the

plaintiff and other lot owners abutting thereon, for some years prior to the commencement of this suit, maintained fences between their lots and said street without objection on the part of the defendant town, and since said properties were bought and sold with a view to the changed conditions, the street must be considered as extending in width only from the line of the plaintiff's fence to the bank of the river.

It clearly appears from the resolution of the board of directors of the Basic City Mining Manufacturing and Land Company and the resolution of the council of the town of Basic City that there was an express dedication and an express acceptance of the streets, alleys and highways indicated and designated by the map of the lands through which they pass, which was recorded in the clerk's office of the County Court of Augusta county. One of the streets designated on that map is Riverside Drive. Its dedication to public use was, therefore, complete.

"When," as was said by Judge Riely in delivering the opinion of the court in *Bunting* v. *Danville City,* 93 Va. 200, 204-5, 24 S. E. 830, "the intention of the owner to make the dedication has been unequivocally manifested, and there has been an acceptance by competent authority, or such long use by the public as to render its reclamation unjust or improper, the dedication is complete." After citing authorities from our own and other jurisdictions, to which may be added *Bellenot* v. *Richmond,* 108 Va. 314, 316, he continues: "And when complete it is irrevocable. No obstruction of the subject of dedication or encroachment upon it by the original owner of the soil or by any one else will affect the dedication, or impair the right of the public to its benefits, unless the land so dedicated has been abandoned by the public or by the proper authority."

The doctrine announced in that case is in accord with the rule generally prevailing in most jurisdictions and

with the ancient maxim, "Once a highway, always a high-
way," unless it is abandoned or vacated in due course of
law.   Elliott on Roads and Streets, sections 40, 70, 414,
871; McQuillen's Municipal Corp., section 1399.

The dedication of the street known as Riverside Drive
being complete, the cases of *Glasgow* v. *Mathews,* 106 Va.
14, 54 S. E. 991; and *Chambers* v. *Roanoke Industrial, &c.
Asso.,* 111 Va. 254, 68 S. E. 980, so much relied on by
counsel for the plaintiff, do not control this case; for in
each of those cases it was held that the dedication of the
streets involved was inchoate merely.   In the former case
the streets in question had never been open at all or used
by the public; in the latter, as I understand the opinion,
the holding that the true width of Pleasant avenue was
sixty-five feet, instead of seventy-five, as laid down on the
map, was based upon the theory that the owner of the
land and purchasers from him had by their acts estab-
lished its width at sixty-five feet before its acceptance by
the public as a street.   The court did not hold that where
there had been an express dedication and express accept-
ance, the dedicator, or those who claim under him, could
afterwards deprive the public of the use of the street, or
any part of it, as laid down on the map, in the absence of
clear proof of an abandonment of the same.   To put such
a construction upon the decision in that case would over-
rule former decisions of the court without referring to
them and without discussion, and overturn the well set-
tled general rule, not only in this but in most jurisdictions,
that when a dedication is complete it is irrevocable, and
that "no obstruction of the subject of dedication or en-
croachment upon it by the original owner of the soil or
by anyone else will affect the dedication or impair the right
of the public to its benefits, unless the land so dedicated
has been abandoned by the public or by the proper author-
ity."   *Bunting* v. *Danville, supra,* and authorities cited.

In the case under consideration it appears that the Basic City Mining, &c. Company, the dedicator of the street in question, did not convey to the original grantee under whom the plaintiff claims until after the dedication had been made and accepted, and had therefore become complete.

The right of the public to Riverside Drive as a street having become complete, the next question is, has that right been lost?

The burden of showing a discontinuance, vacation or abandonment is upon the party who asserts it. There is no claim that the street, in whole or in part, was vacated or discontinued in the manner provided by statute. Code 1904, sec. 944-a, sub-sec. 9; sec. 2510-a, sub-secs. 4, 5, 6. If the public's right was lost, it must, therefore, have been from an abandonment of Riverside Drive in whole or in part.

The abandonment of a street, as stated by McQuillen in his work on municipal corporations, section 1399, "is usually deemed to result from a failure to act. There is no distinct procedure in regard to abandoning a street, although the effect of certain acts may result in an abandonment of all or part of a street. The question of abandoning a street is closely connected with that of adverse possession and equitable estoppel * * *."

Elliott on Streets and Roads (2nd ed.), section 874, says: "In determining whether a highway has been abandoned, it is proper to consider the mode in which the abutters and the public acquired their rights, as well as what the necessity and convenience brought about by subsequent progress and growth may require. Roads and streets are frequently laid out or dedicated with reference to future requirements as well as with reference to the existing conditions of things, and it is not just to assume that because all of the way is not used by the public or

by abutters it has been abandoned. It may well be that some private use of the way may be permitted without impairing the right of the public or of abutting owners, and where it is reasonable to infer that the public and the abutters have not surrendered their rights, it cannot be justly assumed that the way has been abandoned, although the private use of it may be very considerable. It is to be remembered, too, that the rights of the public are seldom guarded with the vigilant care with which owners of private property guard their own rights, and acts and omissions which might weigh heavily against individual owners cannot always be assigned much force against the public."

The circumstances relied on by the plaintiff to show an abandonment or loss of the right of the public to so much of Riverside Drive as was enclosed by his fence, as stated in his instruction No. 1, given by the court, are that that street was never open to public use; that he and other abutters on it had for some years prior to this action maintained fences in what is now claimed as a part of the street, without objection on the part of the defendant or any one else; and that the said properties were bought and sold with a view to such changed conditions.

Clearly, no one of those circumstances alone would show an abandonment of that portion of the street which may be within the plaintiff's enclosure. Delay in opening a street by a municipality which has been expressly dedicated and expressly accepted is not an abandonment thereof, except in so far as statutory or charter provisions fix a rule to the contrary. McQuillen on Mun. Corp., sec. 1401; 28 Cyc. 841-2, and cases cited in notes; *Hayden* v. *Stone,* 112 Mass. 346, 350; *Lee* v. *Harris,* 206 Ill. 428, 69 N. E. 230, 99 Am. St. Rep. 176; *Reiley* v. *City of Racine,* 51 Wis. 526, 8 N. W. 417; *Paragould* v. *Lawson,* 88 Ark. 478, 115 S. W. 379.

In the case under consideration, while the defendant town had never opened the street and it may have been, so far as defendant's acts were concerned, a mere paper street, it was open and used by the public in part. Mere non-user of a portion of a street fenced in with abutting property is not an abandonment by the public. See McQuillen on Mun. Corp., sec. 1399; Elliott on Streets and Roads (2nd ed.), secs. 873, 874; 28 Cyc. 841-2, and cases cited in notes; *Henshaw* v. *Henley,* 1 Gray (Mass.) 203; *Riely* v. *City of Racine, supra; Grandville* v. *Jenison,* 84 Mich. 54, 47 N. W. 600; *Nail & Iron Co.* v. *Fruncee Co.,* 46 Ohio St. 544, 22 N. E. 639.

Even if it were true that the property of the plaintiff was bought and sold under the impression that its front fence was on the boundary line of the street, it will not affect the public right unless the defendant did some affirmative act to mislead the plaintiff, since both the Basic City Mining, &c. Company and the plaintiff, and those under whom he claims, must be held to have known that the line of the street was fixed by the map. Elliott on Streets and Roads, section 884. But as a matter of fact the conveyances to the plaintiff, and to those under whom he claims, so far as they appear in the record, all show that the said lots were purchased and sold according to the lines thereof as shown and designated on the map, without any reference to the fence.

It does not appear that the defendant actually knew, until after the plaintiff's action was instituted, that any part of Riverside Drive, as laid down on the map, was within the plaintiff's enclosure, or that the defendant had done anything to induce the plaintiff or those he claims under to believe that it had abandoned the street, or any part of it, except failure to improve the street and to object to the location of the fence in front of the property. This non-action of the defendant, which was for less than

twenty years (how much less does not appear), clearly does not show that the defendant had abandoned the street or any part of it. It is not claimed that the right of the public to the enclosed portion of the street has been or could be lost, under our decisions, by adversary possession. *Yates* v. *Town of Warrenton,* 84 Va. 337, 4 S. E. 818, 10 Am. St. Rep. 860; *Bunting* v. *Danville, supra; Bellenot* v. *City of Richmond, supra.*

Neither has such right been lost under the doctrine of equitable estoppel (even if that doctrine exists in this State in cases like this, as to which we express no opinion) for in those jurisdictions where that doctrine does prevail, according to Judge Dillon (one of its strongest advocates), as stated in a note to section 1194 of the fifth edition of his work on Municipal Corporations, "The principle of estoppel *in pais* has been applied to exceptional cases where the elements calling for its exercise appear to have been an abandonment of the public use for the prescriptive period, enclosure and expensive improvements, such as large and costly buildings, or acts of the municipality inducing the abutter to believe that there is no longer any street, and the expenditure of money in reliance upon the acts of the municipality. The absolute *bona fides* of the abutter or adverse possession is a most important factor where an estoppel *in pais* is claimed. The acts relied on must be of such a character as to amount to a fraud if the city were permitted to claim otherwise."

Tested by that rule it is clear that the defendant is not equitably estopped from asserting its right to the whole street as laid down on the map.

The court is of opinion that the evidence in this case did not warrant the court in giving the plaintiff's instruction No. 1, and that it ought to have given the defendant's instruction No. 4, which told the jury that

the boundary line between the plaintiff's property and Riverside Drive was the line shown and designated upon the map or plat by which it was dedicated and accepted.

The other question to be considered is whether or not it was competent for the defendant to show the establishment and opening of Canal street for public use, after the institution of the plaintiff's action, as a way of ingress and egress to and from the plaintiff's property, in reduction of damages.

The plaintiff introduced evidence tending to show that when the injuries complained- of were inflicted his only means of ingress and egress to and from his property were by Riverside Drive, and that the action of the defendant in constructing its canal or race along and over that street totally destroyed it and deprived him of his only way to and from his property. The evidence tends strongly to show that the principal injury done the plaintiff's property by. the defendant's wrongful act arises from the destruction of the street as a way to and from his property, and that when the plaintiff's suit was instituted his property, as some of his witnesses stated, had been practically ruined, and that the damage done it was equal to its value before the dam and canal were constructed. The defendant placed upon the stand several witnesses, who would have testified, in substance, that after the plaintiff had brought his action a street known as Canal street had been established and opened by the defendant, leading from one of the principal streets of the town along the west bank of the canal to Riverside Drive and to the property of the plaintiff, which furnished a good way to and from the plaintiff's property—a much better way than Riverside Drive ever furnished—and that after Canal street was established the plaintiff's property was not damaged by the canal, but was worth as much as it was before Riverside Drive was destroyed as a way to and

from the property. The plaintiff objected to this evidence upon the ground that nothing which had happened since the institution of this suit was admissible in evidence. The court sustained the objection and refused to permit the evidence to go to the jury.

The defendant's contention, in substance, is that conceding that the plaintiff is entitled to recover all the damages actually done to his property from the defendant's wrongful act, he is not entitled to be compensated for being permanently deprived of a way of ingress and egress to and from his property, when as a matter of fact that injury was only temporary and had ceased to exist before the trial of the cause.

Whatever may be the correct rule as to the admissibility of evidence in actions *ex delicto* as to matters occurring after the commencement of the action for the purpose of aggravating or mitigating damages, we do not think it applies to this case. The evidence rejected was not, properly speaking, in mitigation of damages but in proof of the actual amount of damages suffered by the plaintiff. As long as the plaintiff was deprived of a means of access to his property he was entitled to damages therefor, but when Canal street was opened, furnishing him, as the evidence offered tended to show, as good or a better way of egress and ingress, why should he recover damages for being permanently deprived of a means of access to his property when that deprivation was only temporary?

In section 56 of Sedgwick on Damages (8th ed.) it is said, that in some cases the reparation has absolutely prevented the happening of damage from the injury. In such cases this is allowed to be shown, not properly speaking in reduction of damages, but in proof of the actual amount of damages. Acceptance by the injured party need not be shown, for no right ever accrued to him to recover more than the original and actual loss."

One of the cases he cites to sustain his statement is that of *Mannville Co.* v. *Worcester,* 138 Mass. 89, 52 Am. Rep. 261. In that case, which was for the diversion of a water course, the fact that a part of the water was returned to the stream above the plaintiff's land was held proper to be considered in estimating the amount of damages.

In the case of *City of Joliet* v. *Blower, &c.,* 155 Ill. 414, 40 N. E. 619, which was an action against a city for a change of grade, cutting off access to the plaintiff's property for both teams and pedestrians, it was held that it was proper to show upon the question of damages that the city had contracted for the construction of steps which would give pedestrians access to the plaintiff's property from one direction, and for a bridge which would give both pedestrians and teams access from another direction, though when the action was begun the construction of such steps and bridge had not begun. In that case there was some question as to whether the contract for the construction of the steps and bridge was made before or after the plaintiff's action was to be considered as commenced. The court, after expressing the view that the contract was made before action brought, said: "But even if it were to be regarded otherwise and denied that the commencement of the suit of appellees dates from December 24, 1891, yet we see no good reason why the proffered evidence was not admissible in mitigation of damages. By the judgment below appellees obtain damages for permanent injuries to their reversionary interest in the property, on the theory that there is no bridge to connect Broadway north of Exchange street with Broadway south of that street, and no steps or other passageway for pedestrians that connect Broadway with Exchange street; and at the same time their property derives all the benefits of such a bridge and of two passways for foot travelers leading from Broadway

to the grade of Exchange street.   Such a result is manifestly and radically wrong and unjust."

In that case the steps and bridge which were to give the plaintiff's access to their property were only in process of construction.   In this, the rejected evidence was that Canal street had been established, opened and was then being used by the plaintiff and the public as a way to and from his property, yet under the rulings of the court in rejecting the evidence in question and by the instructions given, the jury were directed to assess the plaintiff's damages as if he had been permanently deprived of access to his property.

In *Mash* v. *McPherson,* 105 U. S. 709, 716, 26 L. Ed. 1139, it was said by Mr. Justice Mathews, in delivering the opinion of the court, that, "It is a well settled rule of law, without exception so far as we are aware, that any circumstances otherwise competent as evidence to reduce damages may be proven at the trial for that purpose, although it may not have come into existence until after the commencement of the action."

Whether or not that language was necessary to the decision in that case, it seems to us a correct statement of law as applied to the facts of this case, and that the trial court erred in rejecting the evidence in question.

The judgment complained of must be reversed, the verdict set aside and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*