# Richmond

J. Penn Walters, J. J. Cozart, and T. L. Hutton and Fred C. Buck, Trustees v. Dorothy C. Smith.

March 3, 1947.

Record No. 3148.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*T. L. Hutton* and *H. E. Widener*, for the appellants.

*Roby C. Thompson* and *R. W. Bell*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This suit was instituted by Dorothy C. Smith for the purpose of compelling J. Penn Walters and J. J. Cozart, hereinafter referred to as defendants, to open a certain street or alley, which she alleged that they unlawfully closed, thereby causing her irreparable damage and injury. The prayer of the bill was that Walters and Cozart be restrained and enjoined from obstructing the street or alley leading from the southern portion of her property to a public highway, and that a mandatory injunction be awarded requiring them to remove a building constructed by them across it.

After a full hearing, the trial court ordered the two defendants to remove the obstruction complained of, and perpetually enjoined them from closing, obstructing, or interfering in any manner with the free use and enjoyment of the street or alley by the complainant and her successors in title.

The substance of the principal assignments of error is that Mrs. Smith is not entitled to any relief, but that if she is so entitled, she has a complete and adequate remedy at law for damages.

The street or alley involved and the surrounding land, are shown by the diagram on page 162, copied from a portion of the recorded plat of the subdivision hereinafter referred to, with a dotted line added to show the land of Mrs. Smith.

In 1922, Eula R. Ingham and others owned a tract or parcel of land located partly within and partly without the town of Abingdon. They divided the land into lots, streets and alleys, and caused to be made a plat thereof entitled, "A Plat of the S. F. Hurt Subdivision." This plat was duly acknowledged and admitted to record in the clerk's office of the Circuit Court of Washington county, Virginia, in accordance with sections 5217 and 5218 of Virginia Code, 1919, (now the same sections in Virginia Code, 1942, (Michie) ).

Mill Road and Colonial Road, formerly Main street, are streets in the town of Abingdon. The alley in question is without the corporate limits of the town. The town of

COLONIAL ROAD
formerly Main St.

COLONIAL ROAD

S 68-14 W

76.4    76.4    101.5

5    2.70    4    157.9    Mrs. Dorothy C. Smith's house and lot 3    N 31-14 W    130.5    1    Mill Road

75    100

Corporation line

100    75    2    100

75    street    175    20

A part of The S.F. Hurt subdivision, Abingdon, Va.    Jefferson Town Co.    11    142    10    71    75    175    8    71    9    71    175    71

Hogy Ave.    40

Abingdon and the county of Washington have not assumed or exercised control or jurisdiction over the streets and alleys laid out on the recorded plat of the subdivision, or made any improvements thereon.

The part of the street or alley involved in this proceeding is shown on the plat as located between lot No. 2 on the north and lot No. 8 on the south. It begins at Mill Road and extends westwardly between the two lots a distance of 175 feet. There were 29 lots of various sizes in the subdivision. There have been about 14 residences erected on the lots, and it appears that most of the streets have been opened as necessity required.

Lots Nos. 1, 2 and 3 were conveyed to Cora B. Thayer by deed dated April 22, 1922, from Eula R. Ingham and others. Ownership of lots 1, 2 and 3, as a group, changed subsequently by mesne conveyances, eight or nine, until acquired as a whole by John Banner in 1941. In each deed, conveyance was made by reference to the recorded plat of the S. F. Hurt subdivision. The deed to Cora B. Thayer further described lot No. 2 as running "southwardly 100 feet to a 20 foot street."

In a deed dated July 7, 1932, from W. R. Stone, et al., to Fred Welch, et al., lot No. 2 is described, in part, as "Beginning at the corner of Mill Road and a 20 ft. alley, * * * ; thence a southern direction 100 feet to said alley; thence Northern line of said alley 175 feet to the beginning."

In the deed from Welch and wife, dated May 30, 1938, conveying lots Nos. 1, 2 and 3, to John Banner and J. Sidna Allen, and in the deed from J. Sidna Allen and wife to John Banner, conveying a one-half interest, the strip of land in controversy is called an alley and given as a boundary of the property.

By deed dated July 9, 1942, John Banner and wife conveyed to Dorothy C. Smith the whole of lot No. 3 and a portion of lots Nos. 1 and 2, with the appurtenances thereunto belonging, under the following description:

" * * * being the whole of Lot No. 3 and a portion of Lots Nos. 1 and 2 of the S. F. Hurt Subdivision, and more

particularly bounded and described as follows: BEGINNING at a stake on the South side of Colonial Road, formerly West Main Street, corner to the J. Irby Hurt property; thence with the Hurt line S 30 E 257.7 feet to an alley; thence with said alley N 61 E 80 feet to a stake; thence for a division line N 30 W 254 feet to Colonial Road, formerly West Main Street; thence with the South side of Colonial Road, formerly West Main Street, S 68 45 W 80 feet to the BEGINNING * * * ."

This deed also contained the following provision:

"It is mutually understood and agreed that possession of said land is to pass to the party of the second part upon delivery of this deed, with the exception of 100 feet of the said lot on the southern side thereof, which is now leased to J. Penn Walters, and it is mutually understood that as to the part of the lot herein conveyed which is leased to J. Penn Walters, possession is to pass to the party of the second part on January 1, 1943."

Mrs. Smith's deed was recorded on July 21, 1942. At that time John Banner was the sole owner of lots Nos. 1, 2, 3 and 8, that is, all of the land lying on both sides of the portion of the street or alley here involved.

Mrs. Smith, by her deed, acquired all of lot No. 3, approximately 5 feet of the westerly part of lot No. 1 and 80 feet of the westerly portion of lot No. 2. Her residence is located on lot No. 3, which faces north on Colonial Road. Between the southern building line of her residence and the alley in question, she has a lot 80 feet wide and 149 feet deep, facing the alley.

Six months later John Banner and wife, by deed dated January 1, 1943, conveyed to J. Penn Walters all of lot No. 8 and the remaining portion of lots Nos. 1 and 2, not theretofore conveyed to Mrs. Smith.

A portion of the land which Mrs. Smith bought had been leased by John Banner to Walters prior to the sale to Mrs. Smith. Before accepting her deed, Mrs. Smith required Banner to secure a release from Walters on the land purchased by her. This accounts for the provision in her deed.

In the release deed from Walters, dated July 21, 1942, specific reference is made both to the plat of the S. F. Hurt subdivision and to the street or alley. It contains the following recital and description of the property released:

"WHEREAS, the party of the first part (J. Penn Walters) is desirous of releasing any right that he may have in and to that part of the property sold by John Banner to Dorothy C. Smith, fronting 80 feet on the south side of Colonial Road, and extending in a Southerly direction approximately 157.7 feet, being all of lot No. 3 and a strip about five feet in width of Lot No. 1, of the S. F. Hurt subdivision and is desirous of modifying the terms of the above mentioned contract dated September 20, 1939, to the extent that he agrees to give possession on or before January 1, 1943, to the said John Banner or his successors in title of that part of Lot No. 2 of the S. F. Hurt subdivision described as follows:

"'BEGINNING at a stake on the east line of the J. Irby Hurt property and being the northwest corner of Lot No. 2; thence with the line of J. Irby Hurt property, S 30 E 100 feet to an alley; thence with said alley N 61 E 80 feet to a stake; thence N 31 W 100 to a stake in the line between Lots Nos. 2 and 1; thence with the southern line of Lots Nos. 1 and 3, 80 feet to the BEGINNING.'"

Mrs. Smith testified that she purchased her lots under a definite understanding with Banner that there was a twenty-foot alley south of her property, extending eastwardly to Mill Road, as shown on the plat of the S. F. Hurt subdivision.

Mrs. Smith said that Banner told her that the vacant portion of the property conveyed to her could be used as an additional building site for a dwelling house, with the alley on the south of it; and that he pointed out to her on the ground the location of the street or alley and its advantages to the property he was trying to sell. She said she relied upon Banner's statement that the street was as shown on the plat of the Hurt subdivision; that she was interested in having an open way from the southern portion of her property to Mill Road; that she would not have purchased the

property except for the representation that there was such a street and a right-of-way thereover to Mill Road; and that she paid accordingly an added value for the land.

She further stated that, in the presence of herself and husband, Banner not only pointed out the location of the street, but actually placed stakes both at the corners of the purchased land and also on both sides of the alley.

There is also further evidence that, in the early summer of 1944, Walters had actual knowledge of the existence of the alley when he assisted a surveyor in establishing it, as shown on the recorded plat of the Hurt subdivision, and in locating thereon the easterly boundary of Mrs. Smith's land.

The evidence of the defendants shows that the 20 foot strip of land described as "street" on the map of the subdivision and as "alley" in many of the deeds in the chain of title has never been opened or graded, or used for vehicular or pedestrian traffic; that since 1922, wire fences have been at times constructed across the strip; that a fence was across its intersection with Mill Road until it was removed by Walters shortly before or after Mrs. Smith acquired her lot; that a planing shed and a hog pen were maintained on the alley for a long time; that it was once practically covered with sawdust and lumber owned by Banner and Allen or Walters; and that one time it was fenced into lot No. 8 and cultivated.

By deed of trust, dated February 15, 1944, Walters and his wife conveyed to T. L. Hutton and Fred C. Buck, trustees, lot No. 8 and his portion of lots Nos. 1 and 2, and also lot No. 9, to secure the payment of a certain debt. This deed of trust not only described the lots with reference to the plat of the Hurt subdivision, but it described the street or alley in controversy as a boundary of a portion of the property.

On the same day, Walters leased to J. J. Cozart all of the last described property, except lot No. 9, the conveyance again referring to the plat of the S. F. Hurt subdivision. The lease recited an agreement to construct a warehouse on the property.

In the spring or summer of 1944, Walters and Cozart began the construction of a tobacco warehouse. Walters already owned an old building on lot No. 1, 90 feet long and 40 feet wide fronting on Mill Road. The new building was to be 253 feet long, 91 feet wide, and 14 feet high, of cinder block, with cement floor, and composition roof. A pencil drawing of this building shows it as extending from the southern portion of lot No. 8 across the 20 foot alley to the old building on the north of the alley.

. Prior to October 11, 1944, Walters and Cozart had constructed the foundations and the walls of the new building up to the south side of the alley, and placed some posts or pillars to support a structure on the north side of the alley. The 20 foot strip or alley between the two buildings was not in anywise obstructed until October 11, 1944. On that date, four or five boards were nailed across the entrance of the alley into Mill Road, thus connecting the constructions on either side thereof.

On October 10, 1944, the husband of Mrs. Smith commenced excavating or working in the alley. It was while he was continuing this work on October 11th, that the defendants nailed the planks across the entrance to the alley.

On October 12th, Mrs. Smith had the following notice duly served upon both Walters and Cozart:

"To James P. Walters and J. J. Cozart: ·

"You and each of you are notified that you have and are now interfering with the use by me of the street or alley running from Stone's Mill Road west to the southern boundary of my property in the west end of Abingdon. This street or alley is an open way.

"You have prevented me from using this street or alley by nailing boards across the same at the Stone Mill Road entrance and also at a point west thereof where I enter said street from my property.

"I respectfully request that you remove these obstructions upon receipt of this notice so that I may have the free use and enjoyment of said street or alley.

"Given under my hand this 11th day of October, 1944.
                                    DOROTHY C. SMITH"

Walters and Cozart refused to remove the planks, and, notwithstanding the notice served on them, proceeded with the construction of their warehouse. They connected the two buildings, the one on the south side of the alley and the one on the north by joining the roofs of the two buildings, placing a concrete floor across the alley, erecting a concrete wall connecting the foundation of the buildings, and placing doors across the alley at the front and rear of the joined buildings. The doors were 20 feet wide, the exact width of the alley, and fully obstructed its entrance from Mill Road.

On October 20, 1944, Mrs. Smith instituted this proceeding. On November 13th, upon the statement of the defendants that they would not rely as a defense on any work done by them towards the completion of the building across the alley, the court continued the matter until the evidence could be more fully heard. No posts or pillars had been put in the alley, and no part of the building had been constructed over it prior to the notice of October 12th.

On November 13th, a witness stated that the cost for removing the obstructions then in the alley would be $200. However, subsequent to that date and prior to the final hearing, the defendants continued with their construction work and almost completed it.

The defendants insist that there never had been a complete dedication of the alley to the public, in that it was never opened or used as such; that if there had been a dedication, the general purpose thereof had failed by abandonment and non-user; and that Mrs. Smith, by sitting silently by and permitting them, at great expense, to construct the warehouse, which she knew they intended to extend over the 20 foot strip involved, was estopped from claiming an easement in said land.

The learned trial judge filed a written opinion which fully covered the case. He held that it was unnecessary to decide whether the recordation of the plat showing the 20 foot street, and the deed of April 22, 1922, from Eula R. Ingham

and others to Cora B. Thayer constituted an irrevocable dedication to the public of the streets and alleys shown on the plat; that since Banner was the owner of all of the property on both sides of the alley and the common grantor of Mrs. Smith and Walters, the latter was estopped to claim adverse possession; that, as between the defendants and Mrs. Smith, Mrs. Smith, by virtue of her deed from Banner and the deed from Banner to Walters, had a contractual right to use the twenty-foot strip of land as an alley or private right-of-way of ingress and egress to and from Mill Road, as appurtenant to her land; that an injunction was necessary to prevent the defendants from violating the rights of Mrs. Smith, inasmuch as there was no measure by which to ascertain her damgaes at law; that the injunction should apply only to so much of the alley as extends from the westerly line of Mrs. Smith's property to Mill Road; and that the ruling of the court should not be construed as a passing upon the rights of any one other than the parties to the suit, nor be considered as affecting the legal status of any of the streets and alleys shown on the recorded plat of the Hurt subdivision.

The decree appealed from, embodying the above views, was entered on January 23, 1945.

For the purposes of this case, we agree with the trial judge that it is unnecessary to decide whether the recordation of the plat of the Hurt subdivision and the deed of April, 1922, to Cora B. Thayer constituted an irrevocable dedication to the public of the streets and alleys shown thereon. Nor do we think it necessary to consider whether any easement or right of passage created by the recordation of the plat had been abandoned or otherwise lost.

In 28 C. J. S., Easements, section 40, the principle applicable here is stated as follows:

"Where a grantor conveys land by a deed describing it as bounded by a road, street, or alley, the fee of which is vested in the grantor, the grantee acquires a right of way over the road, street, or alley. This rule has been held to apply whether or not the road is in existence, and whether

or not an easement in the street is necessary. The right of the grantee, as against the grantor to an easement is not one of dedication, but of private right, depending on the construction of the deed. The easement thus created is independent of the public right and survives the extinguishment of the public easement; * * * ."

See to the same effect 17 Am. Jur., Easements, section 46.

In *Gish* v. *Roanoke*, 119 Va. 519, 89 S. E. 970, quoting from Jones on Easements, page 23, we said:

" 'It is a settled rule,' says Justice Shaw, 'that when land is granted, described as bounding on a way it is an implied covenant that there is such a way; that so far as the grantor is concerned, it shall be continued, and that the grantee and his heirs and assigns shall have the benefit of it.' * * *

" 'In *White* v. *Tide Water Oil Co.*, 50 N. J. Eq. 1, 5, 25 A. 199, 200, the New Jersey court thus states the law: 'Indeed, wherever a dedication of a public highway is effected—as usually is—by means of conveyances to private persons by reference to a proposed street over other lands of the grantor, the private rights of the several grantees precede the public right and are the sources from which the public's rights spring. By such conveyances the grantees are regarded as purchasers by implied covenants of the right to the use of the street as the means of passage to and from their premises as appurtenant to the premises, and this right of way in the grantee is wholly distinct from and independent of the right of passage to be acquired by the public; and it is upon the theory that the owner of the fee, by grants of rights of way in the street to his grantee, has parted with all beneficial ownership in the street, that the public authorities may take for a public highway without any compensation to him.' "

In *Sipe* v. *Alley*, 117 Va. 819, 86 S. E. 122, where the facts are somewhat similar to those here, the defendant was required to open a street and perpetually enjoined from obstructing it. The defendant there contended the street in

question had been abandoned and that its use was not necessary for the enjoyment of the complainant's lot.  Upon those questions this was said:

"The defendant insists that the use of Calvin Street by the complainants is not a necessity * * * .  This was not, in our view, a material question.  When the land company recorded its plat and sold the lots designated thereon to individuals by reference to such plat, the grantees from the company and all persons claiming under them acquired vested easements in all the streets and alleys laid out and designated on the plat.  * * *

" * * * When a street has been dedicated the burden of showing a discontinuance, vacation or abandonment is upon the party who asserts it.  * * *  The chief circumstance relied on in support of the suggestion of abandonment is that the street was never open to the public· use, and that the defendant and her predecessor has maintained, without objection, for a long time a fence enclosing it with her own property.

\*       \*       \*       \*       \*       \*

"Delay in opening a street is not an abandonment thereof, except so far as statutory or charter provisions fix a rule to the contrary.  Nor is a mere nonuser of a portion of a street fenced in with abutting property an abandonment of the street by the public.  Some private use of the public way is not infrequently accorded abutting owners until the public use requires its surrender.  (*Basic City* v. *Bell*, 114 Va. 157, 76 S. E. 336, Ann. Cas. 1914A, 1031)."

See *Scott* v. *Moore*, 98 Va. 668, 37 S. E. 342, 81 Am. St.· Rep. 749.

The private right of Mrs. Smith to an easement in the alley is sustained by her contract with the grantor in her deed, irrespective of the status of the 20 foot strip of land as a public street or alley.  No abandonment by the public could affect her private right to an easement appurtenant to her land.  At the time of her purchase, as we have noted,

John Banner was the owner of all the property contiguous to that portion of the alley in which her claim is asserted. It is not denied that Banner had the right to convey to Mrs. Smith a right of way over the alley to Mill Road. That he did so is evidenced both by the language of his deed to her and his uncontradicted representations as to the existence of the alley.

The defendants further contend that by the adverse use and possession of the 20 foot alley by themselves and their predecessors in title for more than 20 years, any public or private easement over the alley, if such ever existed, had been extinguished. They overlook the fact that John Banner, through whom they claim, was the same grantor through whom Mrs. Smith claimed by a prior conveyance. If Banner held adverse possession, he did not hold it adversely to himself or his subsequent grantee. If he held a fee simple in the 20 foot strip by title of record or by adverse possession, his deed to Mrs. Smith converted the strip into an alley, subject to an easement appurtenant to the land conveyed. He and his subsequent grantees were estopped to deny its existence as against his vendee. *Daniel* v. *Doughty*, 120 Va. 853, 92 S. E. 848; *Deitz* v. *Johnson*, 121 W. Va. 711, 6 S. E. (2d) 231.

In Minor on Real Property, (Ribble) Vol. I, section 104, this is said:

"Easements are sometimes created by *estoppel*; for example, if the vendor of land actually or constructively makes *representations* as to the existence of an easement appurtenant to the land sold to be enjoyed in land which the vendor has not sold. Thus, where a vendor describes the land sold as bounded on a *street* described as running through the vendor's unsold land, the vendor is, as against his *vendee*, (though not necessarily as against the public, or third persons), estopped to deny the existence of such a street, the conveyance practically creating a private right of way over the vendor's land along the *route* described in favor of the grantee."

The defendants had full knowledge, actual and constructive, of Mrs. Smith's claim to a free use and enjoyment of the alley before they obstructed it in anywise. They recognized the alley in their deeds and by their actions. They were charged with notice of Mrs. Smith's recorded deed. Mrs. Smith promptly undertook to prevent them from closing the alley before they had gone to any great expense. They, nevertheless, continued to make improvements over the alley in the face of the most positive and urgent warning. They proceeded at their own peril, and if they will suffer a great pecuniary loss thereby, they have themselves only to blame.

See *Springer* v. *Gaddy*, 172 Va. 533, 2 S. E. (2d) 355; and *Cheatham* v. *Taylor*, 148 Va. 26, 138 S. E. 545.

The cases of *Glasgow* v. *Mathews*, 106 Va. 14, 54 S. E. 991; *Payne* v. *Godwin*, 147 Va. 1019, 133 S. E. 481; and *Akers* v. *Mathieson Alkali Works*, 151 Va. 1, 144 S. E. 492, relied upon by the defendants, may be readily distinguished both upon the facts and the objectives sought.

We find no merit in the remaining assignments of error.

The parties to this suit are the only parties whose rights are affected by the decree herein. The rights of the other property owners in the Hurt subdivision are not involved. The relief granted was in accordance with the prayer of the bill filed and the equities of the case.

For the reasons given, we find no error in the decree of the trial court. It is accordingly affirmed.

*Affirmed.*