JUSTICE LACY, with whom CHIEF JUSTICE CARRICO and JUSTICE KINSER
join, concurring in part and dissenting in part.
I concur in the majority’s opinion except for that portion affirming the trial court’s grant of a negative easement by estoppel. Count IV of the bill of complaint alleged that the sales agreement between Prospect Development and the Bershaders provided that Outlot B would not be cleared or developed. The Bershaders alleged that Prospect Development breached this agreement and sought specific performance of the contract. The trial court found that the sales contract was breached and granted specific performance “to the extent” that it found an easement by estoppel, and it awarded permanent injunctive relief to the Bershaders.
I agree with the trial court and the majority that Prospect Development breached its contract and that an award of specific perfor *95 manee and injunctive relief was appropriate; however, under the pleadings and facts of this case, it is unnecessary for this Court to sanction a new cause of action for “negative easements by estoppel” because awarding specific performance of the sales contract and permanent injunctive relief enforces the rights the Bershaders acquired in the purchase of Lot 23 from Prospect Development. Furthermore, in my opinion, the facts of this case are insufficient to support the creation of an easement. Therefore, I respectfully dissent.
In their bill of complaint, the Bershaders alleged that “[t]he parties agreed that as a condition to the purchase of the Property by the Bershaders, the adjoining ‘Preserved Land’ would not be cleared and/or developed.” As evidence of this alleged contractual obligation of Prospect Development, the Bershaders offered the “New Home Agreement of Sale.” The agreement provides that the sale price would “include a house built by SELLER known as ROSEWOOD ELEVATION “D” together with the following optional extras: . . . PREMIUM LOT . . . .” Finding that the term “premium lot” was ambiguous, the trial court properly admitted parol testimony to clarify that term. The parol testimony established that the Bershaders paid an additional $15,000 in return for the promise that Prospect Development would not develop Outlot B. Thus, the sales agreement, as clarified by parol testimony, contains a -written promise with respect to the use of land that Outlot B would not be developed by Prospect Development. Such a promise is specifically enforceable and should be enforced in this case.
The easement created by the trial court and affirmed by the majority was based on this contract as well as oral representations made by Prospect Development. In my opinion, however, neither the contract nor the oral representations retied on by the Bershaders, the trial court, and the majority are sufficient to give rise to an easement, by estoppel or otherwise. An easement is the right of one person over the use of another’s land. The oral representations in this case — that Outlot B was designated as preserved land because it would not perk and could not be developed — even if true, do not imply or suggest that the Bershaders have any right to prevent the development of that parcel. Rather, these representations reflect that a third party, the government, has utilized its regulatory power to limit use of the land. Any change in the regulations or the extension of a sewer system to the area would affect whether Outlot B would perk or whether it could be developed. The Bershaders have no right to affect either of *96 these contingencies and, in the event either occurs, the reasons for the preserved lot designation for Outlot B would no longer exist.
In this regard, the designation of Outlot B as preserved land is analogous to the zoning classification of a parcel of land. A purchaser of land has no right to enforce continuation of a specific zoning classification on an adjacent parcel. Unless such purchaser takes measures to secure in himself the right to control the use of a neighboring parcel, the purchaser relies on the zoning classification at his peril. See Town of Vienna Council v. Kohler, 218 Va. 966, 976, 244 S.E.2d 542, 548 (1978). Therefore, even though the Bershaders were induced to purchase their lot through oral representations that Outlot B was “preserved land” which did not perk and could not be developed, these representations did not give rise to any right in the Bershaders or any owner of Lot 23 to prevent the development of Outlot B.[3]
The right which the Bershaders did acquire to prevent development of Outlot B was the right to enforce the written contract promise not to develop Outlot B against the promisor, Prospect Development.[4] And, as I said earlier, the trial court, the majority, and I all agree that the Bershaders are entitled to enforcement of this contractual right, in this case through specific performance.[5]
In summary, the Bershaders were induced to purchase Lot 23 by the fraudulent representations made by Prospect Development that *97 Outlot B was preserved land because it did not perk and could not be developed and are thus entitled to recover under their fraud counts in their bill of complaint. Prospect Development breached the contract for sale and the Bershaders are entitled to specific performance of the contract. However, in my opinion, the Bershaders are not entitled to an easement by estoppel.
Accordingly, I would reverse the trial court’s judgment establishing an easement by estoppel and ordering such easement entered in the chains of title for Lot 23 and Outlot B. I would affirm the permanent injunction issued by the trial court against Prospect Development Company, Paul Lucas, and Alan Seeley enjoining them from clearing or developing Outlot B.

 These statements, however, as previously discussed were false, and they are the basis for the Bershaders’ recovery under their fraud counts.

 Because we do not recognize the doctrine of promissory estoppel, an oral promise not to develop the land would be unenforceable due to noncompliance with the Statute of Frauds.

 This written promise potentially creates a common law “restrictive covenant,” or “promise with respect to the use of land” rather than negative easement. See Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land, Easements Differentiated from Real Covenants § 1.07 (rev. ed. 1995). Although similar to an easement in effect, a restrictive covenant arises from a contract rather than from documents of conveyance. See Oney v. West Buena Vista Land Co., 104 Va. 580, 52 S.E. 343 (1905); Walters v. Smith, 186 Va. 159, 41 S.E.2d 617 (1947); Uriel Reichman, Toward a Unified Concept of Servitudes, 55 So. Cal. L.Rev. 1177 (1982). Such a contractual obligation creates in the promisee a property right in the land of the promisor, enforceable by specific performance. Restatement of Property § 522 cmt. b (1944). Furthermore, the burden of such a “restrictive covenant” would be enforceable against Prospect’s successors in estate if the party seeking enforcement (the Bershaders or their successors in estate) could establish the elements that it “touches and concerns” the land, that there be horizontal privity, vertical privity, notice, and intent. Restatement of Property §§ 530-537. However, whether the sales contract created a restrictive covenant need not and should not be resolved here because the Bershaders, while seeking enforcement of the sales contract, have not argued that the contract is enforceable as a restrictive covenant.