# Staunton.

## E. D. FUGATE v. J. K. CARTER.

September 20, 1928.

The opinion states the case.

W. S. Cox, for the appellant.

S. H. Bond, for the appellee.

HOLT, J., delivered the opinion of the court.

Clinchport is an unincorporated village in Scott county, with from 250 to 300 inhabitants. It was

incorporated in 1904, and its charter was repealed in 1915. There is a plat or map of much or all of the land on which it is located, made for the Clinchport Improvement Company, and which was duly recorded under the statute. Va. Code 1919, section 5219.

On the 27th day of January, 1923, one J. N. Cross conveyed to the plaintiff, Fugate, certain lots— "situated in the town of Clinchport, Scott county, State of Virginia, as per plan of said town made by Henry Webb, Esq., and recorded in the county records of said Scott county, and more particularly bounded and described as follows, to-wit:

"Lots numbered one hundred and sixty-one (161) and one hundred and sixty-three (163) bounded north by alley running and extending from Fourth to Fifth streets, east by Fifth street, south by First avenue, and west by lot numbered one hundred and fifty-nine (159).

Also lots numbered one hundred and sixty-two (162) and one hundred and sixty-four (164) bounded north by Second avenue, east by Fifth street, south by an alley running and extending from Fourth to Fifth streets, and west by lot numbered one hundred and sixty (160)."

Three or four months before the institution of this suit, defendant, Carter, built in Fifth street immediately opposite these lots, a garage, and the prayer of the bill is that a mandatory injunction issue, directing its removal.

On this plat of the Clinchport Improvement Company appears an alley running through this block from Fourth to Fifth street. There is no evidence showing that it was ever open, and it affirmatively appears that it was not open eleven years ago. When plaintiff took title, there was already a barn built across it, when built or by whom is not shown. The defendant also owns a lot in this vicinity. This lot abuts on this

alley, but is apparently not in the block where plaintiff's lots are.

In this state of facts, it is contended that a court of equity can grant no relief; that if the garage is a nuisance the barn is a nuisance also; that the plaintiff does not come into court with clean hands; and that the parties stand *in pari delicto*. This view was adopted by the trial court, and the bill dismissed.

■ In *Sipe* v. *Alley*, 117 Va. 819, 86 S. E. 122, the court said: "When lands are laid off into lots, streets and alleys and a map or plat thereof is made and recorded, all lots sold and conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of the easement in such streets and alleys necessary to the enjoyment and value of said lots. *Cook* v. *Totten*, 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792; *Edwards* v. *Moundsville Land Co.*, 56 W. Va. 43, 48 S. E. 754; *Taylor* v. *Commonwealth*, 29 Gratt. (70 Va.) 780; *Indianapolis* v. *Kingsbury*, 101 Ind. 200, 51 Am. Rep. 749."

This is settled law in Virginia. Its violation by the defendant is practically admitted in his answer: "Respondent admits that, technically speaking, he may not have a legal right to maintain said garage, but the violation, if any, is technical and hurts or injures no one."

■ The garage is built in a public street, and no explanation or excuse has been offered, except that it was convenient to build it there. Of necessity, it is both a public and private nuisance—public in that it unreasonably obstructs traffic in a public street, and private because it directly diminishes the value of plaintiff's lots, in that it impedes free access to them.

The mere fact that it is built in a public street and is a public nuisance of itself gives to the plaintiff no right of action. As a prerequisite to the maintenance of his suit it is necessary that he show that he has suffered, or will suffer, therefrom some special or peculiar damage, as distinguished from that inflicted upon the general public.

"Speaking generally, the obstruction of a public highway is a public nuisance, and the trend of authority is that an individual cannot maintain a bill to injoin such nuisance unless he can show that he has suffered, or will suffer therefrom, special and peculiar injury or damage to himself, as distinguished from injury or damage to the general public. Moreover, such special and peculiar injury or damage must be direct and not purely consequential, and must be different in *kind*, and not merely in *degree*, from that sustained by the community at large." *Bowe* v. *Scott*, 113 Va. 499, 75 S. E. 123.

In *Lawton* v. *Steele*, 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813, it is said: "The general proposition has been asserted in textbooks, and repeated in judicial opinions, that any person may abate a public nuisance. But the best considered authorities in this country and England now hold that a public nuisance can only be abated by an individual where it obstructs his private right, or interferes at the time with his enjoyment of right common to many, as the right of passage upon the public highway, and he thereby sustains a special injury. *Brown* v. *Perkins*, 12 Gray (Mass.) 89; *Mayor of Colchester* v. *Brooke*, 7 Ad. & E. 339; *Dimes* v. *Petley*, 15 Ad. & E. 276; *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44; *Harrower* v. *Ritson*, 37 Barb. (N. Y.) 301."

■ In the case in judgment, the garage is not only in a public street but immediately adjoins the plaintiff's lot, and of necessity inflicts upon him special damages not suffered by the public at large. For this reason and because it is a private nuisance as well, it should be removed, unless it be that the plaintiff cannot be heard to complain because he is guilty of a like offense— because he does not come with clean hands. Is this true? We think not.

He is the owner of a barn which he did not build, but which stands across one of the alleys shown on the recorded plat of the town of Clinchport. This alley has never been opened, the town charter has been surrendered and the dream of urban expansion has vanished away. Such dedication as may have been made was never consummated, for there has been no acceptance either by the public or by the town. The public, as such, has no interest therein. The private rights of these litigants are alone involved. These are defined and discussed in *Sipe* v. *Alley, supra; Payne* v. *Godwin*, 147 Va. 1019, 133 S. E. 481, and *Wood* v. *Richmond*, 148 Va. 400, 138 S. E. 560.

■ There are many cases which hold that a lot owner who purchases under a recorded plat takes as appurtenant to his lot the right to the use of all of the streets and alleys there shown. Quoad the original owner, the recordation of the plat is a dedication of these highways which neither he nor those who claim under him can question. In the proper application of this rule the principles upon which it rests must be constantly remembered. They are based upon no covenants, but grow out of the doctrine of estoppel, and so are written by equity into each contract of sale.

■ A lot owner has no vested interests in the sense in which that term is frequently used, for in certain

circumstances they may be vacated at the instance of private parties (Code, sections 5220, 5221), and yet private property cannot be taken for private use either with or without compensation.

Said section 5221 provides that the plat may be vacated in its entirety by the proprietor before sales, and it may likewise be vacated at the instance of all of the lot owners.

It may be partially vacated, "if such vacating does not abridge or destroy any of the rights or privileges of other proprietors in said plat," by other lot owners who so desire. It thus appears that unanimous consent is not necessary, and no compensation is provided for nothing of value is taken.

Judge Cooley in *Schermerhorn* v. *Todd*, 51 Mich. 21, 16 N. W. 304, and Judge Holmes (now Mr. Justice Holmes), in *Pearson* v. *Allen*, 151 Mass. 79, 23 N. E. 731, 21 Am. St. Rep. 426, each had occasion to consider this subject, and reached the conclusion that the principle invoked has no application unless some equities are involved. Judge Cooley calls attention to the fact that this principle rests upon the equitable doctrine of estoppel and said that equity would not intervene. "To force the streets open under such circumstances would be to inflict serious injury upon defendant, and prevent his making valuable use of his premises, with no corresponding advantage to any one."

Judge Cooley's views have, as we have seen, express statutory approval in Virginia. "If such vacating does not abridge or destroy the rights or privileges of other proprietors in said plat," then lot owners, under section 5220 of the Code, may, through the machinery of the law, or under section 5221, *in pais*, vacate and close alleys and streets. All that it is necessary to show is that nobody will be hurt. When these conditions

obtain, the equitable doctrine of estoppel will not be extended to protect a right that does not exist in a cause already lost.

■ This would seem to be the true rule. Lot owners are presumed to be interested in all streets and alleys shown on the recorded plat in which their lots are located, but this is a presumption of fact and may be rebutted both under general law and particularly under our statute. Whenever it is made to appear that a protestant has no interest, equity will stay its hand.

■ This issue raised by the answer as to the barn obstructing the alley, comes to us as it would if set up in an original bill. Neither the pleading nor the proof sustain it. There is no claim of injury either in the pleadings or in the evidence. The pertinent facts are these: Across an alley that probably cannot be located on the ground stands a barn built more than eleven years ago, and this in a town that has ceased to be. No one has ever claimed to be even inconvenienced, and the defendant even now makes no such claim, but is content to rest upon the naked presumption which attaches when a lot shown on a recorded plat is sold and bought, and this will not always do.

In the view which we have taken of this cause, we deem it unnecessary to consider the relative rights of parties who are both at fault.

The net results of our consideration of this case are these: The defendant's garage must be removed, but the plaintiff is not required to remove his barn, and it is so ordered.

*Reversed.*