# Richmond.

## Marguerite B. Read v. Alida W. Jones and C. C. Jones.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*Robert W. Mallet* and *John B. Jenkins, Jr.*, for the appellant.

*Willcox, Cooke & Willcox* and *N. T. Green*, for the appellees.

WEST, J., delivered the opinion of the court.

Marguerite B. Read and Alida W. Jones are the owners of two adjoining tracts of land, situate at Edgewater, in the city of Norfolk, Virginia. Mrs. Read is the owner of the southern and Mrs. Jones of the northern tract. These two tracts of land are separated by a private road, or lane, twenty-five feet wide, known as "Cedar Lane," which extends from the Elizabeth river, on the east, to the old Quarantine public road, on the west.

This suit was instituted by Marguerite B. Read

against Alida W. Jones and C. C. Jones, her husband, to procure a decree "affirming, declaring and adjudicating in her favor, all the rights claimed by her in and to the said road or land, and enjoining them from interfering in any manner with her enjoyment of said rights."

Mrs. Read contends that "Cedar Lane" is a joint lane to be used as a common lane by the coterminous owners, and that each coterminous owner owns the fee simple title to the center of the lane, subject to the right of way of each over every other portion of the whole lane.

Mrs. Jones maintained that complainants had no interest, but if they ever had any interest in the "Cedar Lane" right of way, they have by non-user for more than fifteen years abandoned the right to use any portion of the same; and that any right the complainants may have had to use "Cedar Lane" as a right of way is barred by the statute of limitations; that, in any event, complainant has no right to use any portion of the right of way in any other manner than she and her predecessors in title have been accustomed to use it.

The court, upon the pleadings and depositions of witnesses, entered a decree on June 10, 1927, without passing upon the motion to exclude certain evidence, adjudging that "Marguerite B. Read, as owner of the land alleged in the bill to belong to her, and, as appurtenant to said land, and her heirs and assigns, and her and their agents and servants, and any other person for their use or benefit, are entitled to use as a right of way the road or lane as it is now located and fixed on said land of said defendant, Alida W. Jones, from where there is a gate at that end of the lane as now located, on the southern side of said lane, through

which access and entry on said lane has been and is now had from said land of said complainant, Marguerite B. Read; and thence over said lane as it is at present located on said land to the eastern end of the same, where there is at present a gate or gates, between two brick columns, through which said right of way the said complainant, and the persons aforesaid·claiming under her, may, at all times, freely pass and repass * * *."

The petitioner, Marguerite B. Read, makes two assignments of error, which she considered together and we will do likewise, to-wit:

"*First*, the error in decreeing that your petitioner was entitled, as an appurtenance to her land which borders a certain road or lane, called 'Cedar Lane,' on the south, to use and have her servants, tenants and invitees to use as a right of way the said road or lane which runs along the southern border of the tract of land belonging to Alida W. Jones from the gate in a fence on the southern side of said lane, through which access is had to the land of your petitioner, and thence over said lane to the eastern end, and refusing to decree that the said 'Cedar Lane' was a common or joint lane throughout its entire length from the Elizabeth river on the west to the eastern end of Studeley avenue, which should be kept open and free from obstructions, and that the dividing line between the properties of your petitioner and the said Alida W. Jones is the center line of said 'Cedar Lane;' and

"*Second*, the error in decreeing that your petitioner has no right or ownership·in any of the land between the said 'Cedar Lane' as now located and the fence to the south of the said lane, or if destroyed, to the line of said fence."

The first deed in the chain of title to the land of Mrs. Jones is from King to John Walke, dated July 12, 1838. The description of the land, so far as it refers to the southern boundary of the land, is as follows:

"Commencing at the junction of road (Ceder Lane) on the south side of said farm Pomfret with the river, thence by the side of the river 14° W. 7.00 chs.  *  *  * thence along Johnson's line S. 21° E. 14.44 chs. to center of the road between said farm Pomfret and the lands of Dennis Delaney (ancestor in title to petitioner), thence along said road S. 89½° W. 21 ch., thence N. 79° W. 11.58 chs. to the beginning."

Mrs. Read owned the property just south of the property owned by Mrs. Jones. They derived their title through William Denby, Jr., as the common source of title through whom all the parties to this suit claim.

William Denby, Jr., acquired the Read property by deed from Isaac M. Smith, trustee and executor, dated February 20, 1860, and recorded two days later. William Denby, Jr., acquired the Jones property by deed from Miars and wife, dated in 1854, and recorded December 2, 1854; The ownership of both pieces of property being vested at the same time in William Denby, Jr., all easements theretofore in the land were thereby extinguished.

In Goddard on Easements, page 457, the law is stated thus: "Easements are also extinguished by operation of law if the *seisin* of the dominant and servient tenements becomes united in one and the same person. This has been an established principle of the English law from very early times, and was distinctly recognized in the case of *Sury* v. *Pigot* (Popham's Rep. 166), already noticed, in which the

difference between easements and natural rights in this respect was pointed out. The true reason why union of *seisin* has the effect of extinguishing easements is very apparent on consideration of the nature of those rights and their origin. Easements are, by their nature, rights possessed by the owner of one piece of land in another piece of land belonging to a different person; if, therefore, the *seisin* of the two pieces is united in one owner the right must necessarily cease to be an easement, for it becomes one of the rights of property to which all owners of land are entitled. The right is not merely suspended on union of *seisin* so as to revive again on severance of the properties, for easements have their origin in grant, and on severance of the original dominant and servient tenements the original easements cannot revive without a fresh grant, and then, indeed, the rights granted are not the original but new easements."

William Denby, Jr., conveyed the property now owned by Mrs. Jones to Virginius L. Denby on April 19, 1860, the deed being recorded on May 1, 1861. In this deed Denby made no reference to a right of way over the property which was being conveyed; nor did he use language which, in the light of the record, could be fairly construed as granting afresh the easement over said land.

By deed dated February 9, 1869, and recorded February 18, 1869, William Denby, Jr., conveyed to Matthew P. Rue the property now owned by Mrs. Read. Having, nearly nine years prior to that date, conveyed to Virginius L. Denby the property now owned by Mrs. Jones, he could not create in it a new easement or revive in it an easement which had been extinguished.

The following language is found in the deed from

William Denby, Jr., to Matthew P. Rue, under whom Mrs. Read claims: "Beginning at a point on the Elizabeth river, on the south side of a road or lane separating the tracts of land conveyed from a certain other tract of land belonging to the said William Denby, Jr., thence in an easterly direction along the south side of said road or lane to the main road leading to Norfolk city, then　＊　＊　＊　together with a right of way in and over the aforesaid lane, which forms the northern boundary of the aforesaid premises for the said Matthew P. Rue　＊　＊　＊　in common with the said William Denby, Jr.,　＊　＊　＊," etc.

As already indicated, Mrs. Read could not acquire a right of way over the lane under the terms of this deed.

In stipulation "A" is found a letter from A. C. Freeman, Jr., to John W. H. Porter, commissioner in chancery, which gives his reasons for locating the line between the two tracts of land where he does. He refers to the deed of February 9, 1869, from William Denby, Jr., to M. P. Rue, and says that at that time "the boundary line of the land is therefore changed, the middle of the road is no longer the boundary line, but the south side of the road is."

█ It is a potent fact that in the deed from William Denby, Jr., to V. L. Denby, conveying the "Pomfret farm," and in all subsequent deeds under which Mrs. Jones claims, "the line of Mrs. Read's property was given as the southern boundary line of the property which Mrs. Jones owns, and, therefore, necessarily embraces the entire road."

██ In our view, only one of the remaining questions raised need be considered, namely, has Mrs. Read acquired a right of way over the property of Mrs. Jones by prescription? We answer, she has.

It sufficiently appears from the record that Mrs. Read and her predecessors in title have used a right of way along and over "Cedar Lane" for far more than the period of twenty years, adversely and under a claim of right, continuously, uninterruptedly and with the knowledge and acquiescence of the owner of the land over which it was claimed. Complainant's right of way, so acquired, can be used by her only where it has been for many years located on the ground, and as has been used by her and her predecessors in title.

In Goddard on Easements, page 320, we find this: "Under ordinary circumstances the owner of a private right of way is entitled to enter the way at one and the same place only, and not at any other; for instance, if a way to a field runs by the side of the field, the dominant owner is not entitled to alter the position of the gate through which he has been accustomed to pass from the field to the way, and to make a new passage at a fresh place. This is not, however, the rule in cases of public ways, and the distinction was pointed out by Chambre, J., in the case of *Woodyer* v. *Hadden* (5 Taunt. 132), when he said: 'A public road differs from a private road in this; you may make an opening in your fence and go into it at any part of the length of the public road, or at the end; but in a private road you must go in at the usual and accustomed part.' The reason for this rule seems to be that a private right of way must have its origin in a grant, and though a grantor may not object to a person entering his land from the way at one particular spot, for that may not cause him any inconvenience, yet it may be very much against his inclination that he should enter it at any other place. If a grant of

the way has to be presumed, as in cases of prescriptive claims, it cannot be presumed that the grantor gave a right of access to the way at any other than the accustomed spot of entry; * *."

The case has been correctly decided and substantial justice has been done. We find no error.

*Affirmed.*