# Richmond

HOWARD STRICKLAND, ET AL., T/A STRICKLAND BROTHERS, ET AL.
v. JACK P. BARNES, ET AL.

December 6, 1968.

Record No. 6780.

Present, Eggleston, C. J., Buchanan, Snead, Carrico, Gordon and Harrison, JJ.

*J. Stanley Livesay, Jr. (Babb, Oast & Livesay,* on brief), for appellants.

*Hugh A. West (Moody, Mattox, Young and MacMurran,* on brief), for appellees.

GORDON, J., delivered the opinion of the court.

Defendants James L. Smith, Jr. and Strickland Brothers appeal from a decree permanently enjoining them from fencing-off a 25-foot strip of land owned by Smith and used by the plaintiffs for access to their properties. The issue is whether the deeds to the plaintiffs' predecessors in title granted them easements to use the 25-foot strip for ingress and egress by motor vehicle.

For an understanding of the facts, a map dated March 14, 1947 (the "1947 map") is reproduced on the following page. The map shows the 25-foot strip, the fence the defendants desire to erect, and the properties owned by plaintiffs Jack P. Barnes, William T. Pearson and Creed Miniard. (Note: Unfortunately, north is at the bottom of this map and all other maps introduced in evidence in this case.)

We will consider first the right of plaintiffs Barnes and Pearson to use the 25-foot strip. They rely on a deed dated September 21, 1946, from defendant Smith's predecessor in title (James L. Smith) to their predecessor in title (W. F. Magann Corporation). The plaintiffs interpret that deed as granting an easement for ingress and egress across the 25-foot strip. Conversely, the defendants interpret the deed as granting at most an easement to use a railroad siding, if a siding should be constructed on the 25-foot strip. The resolution of this controversy depends, therefore, upon the proper interpretation of that deed.

The deed, which conveyed to Magann Lot No. 6 on the plat reproduced on the second succeeding page, recited: "This deed is made subject to the easements and restrictions shown on the said plat. . ." .

This plat (the "1945 plat") shows the following easements: the "Sidewalk" adjoining County Street at the bottom of the plat, and the nearby "Driveway"; the "Reserved 30′ Driveway" (now Third Avenue) in the center of the plat; and the 25-foot strip "Reserved for future R.R. Siding" at the top of the plat.

Defendants Smith and Strickland Brothers contend that James L. Smith did not convey to Magann any easement across the 25-foot strip, but that Smith merely reserved the strip for his use as a railroad siding. We do not agree.

The deed recites: "This deed is made subject to the easements and restrictions shown on the said plat. . ." .[1] Because James L. Smith owned fee simple title to the 25-foot strip, a reservation of that strip

---

[1] The only "restriction" shown on the 1945 plat is the "Plat Bldg. Line" that affects only Lots Nos. 1, 2, 3 and 4.

[2] This map is substantially the same as the Harcum plat, referred to p. 445 *infra*. The Harcum plat shows the three lots owned by Pearson, Barnes and Strickland as one undivided lot owned by J. F. Magann. And the Harcum plat shows the shaded area appearing on the above map as one undivided property owned by "S.A.L. RR. Co.".

Fourth Avenue is blocked by a building and, therefore, not open for use south of (above) the horizontal line marked on this map.

[3] Lot No. 6 shown on this plat comprises the three lots owned by Pearson, Barnes and Strickland shown on the 1947 map reproduced p. 440 *supra.*

After the 1945 plat was prepared, Lots Nos. 4 and 5 were rearranged and a 16-foot alley north of (below) Lot 6 was added as shown on the 1947 map.

for his use would have been meaningless. In the context of this deed, the above quoted words are words of conveyance.[4]

Next, defendants Smith and Strickland Brothers contend that if James L. Smith conveyed to Magann any easement across the 25-foot strip, he conveyed only an easement to use the strip for a railroad siding after a siding had been constructed. This presents the crucial question in this case: What easement or right of way across the 25-foot strip was intended by the words "Reserved for future R.R. Siding"?

By examining the deed to Magann and the 1945 plat, the trial court could determine that Magann had been granted the right to use a railroad siding, if a siding were constructed, and the right to use the 25-foot strip for access to such a siding. But since no railroad siding had been constructed, the issue before the court was whether any right had been granted to use the 25-foot strip pending the construction of a siding. Because the deed and plat were ambiguous in that regard, the court could not decide the issue by referring only to those documents. So the court properly admitted parol evidence to resolve the ambiguity. *Portsmouth Gas Co. v. Shebar*, 209 Va. 250, 163 S.E.2d 205 (1968).

In 1945 James L. Smith prepared a plat showing the property he planned to buy from the Receivers of the Seaboard Air Line Railway Company. That plat (the 1945 plat reproduced above) showed the property divided into lots because Smith proposed to subdivide and sell the property.

Soon after James L. Smith acquired the property, he sold Lot No. 2 and part of Lot No. 3 to A. G. Pinkston.[5] The deed to Pinkston provided:

"[T]his property is conveyed subject to the *easements for ingress and egress shown on the said plat* [the 1945 plat], *including* a driveway and park adjoining County Street, also *a strip on the rear marked 'reserved for future railroad siding', which easements*

---

[4] The fallacy in the defendants' contention that no easement was granted across the 25-foot strip is revealed by their apparent concession that an easement was granted across the "Reserved 30' Driveway" (now Third Avenue) shown on the 1945 plat.

To support their position that James L. Smith conveyed no easement across the 25-foot strip, the defendants rely upon *Gordon Metal Co. v. Kingan & Co.*, 132 Va. 229, 111 S.E. 99 (1922). Unlike this case, the grantor in that case reserved certain rights in the land conveyed by the deed. So that case has no bearing upon this case.

[5] The 1947 map, reproduced p. 440 *supra*, is apparently in error in showing that Lots Nos. 1 and 2 are owned by A. G. Pinkston.

*are for the use of all property owners on said plat.*" (Emphasis supplied.)

All subsequent deeds introduced in evidence conveying lots shown on the 1945 plat provided that they were conveyed "subject to the easements and restrictions shown on said plat".

In 1946 Magann Corporation bought Lot No. 6 shown on the 1945 plat. At that time W. F. Magann, president of the Corporation, had an understanding with James L. Smith that there would be a railroad siding on the 25-foot strip, "if . . . [there] was a demand for it". Relying on this understanding, Magann built a warehouse that fronted on the 25-foot strip, and used the strip for access to the warehouse.[6] Apparently because there was no demand for a railroad siding, no siding was constructed.

When plaintiff Barnes bought the center portion of Lot No. 6 from Magann in 1951, he asked about his right to use the 25-foot strip. Both James L. Smith and Magann advised Barnes that he could use the strip for access to his property. Smith told Barnes that any future railroad siding would be so constructed as to permit Barnes to drive his trucks across the 25-foot strip to and from his property. Relying on those representations, Barnes constructed a building that fronted on the 25-foot strip, and he used the strip for access to the building.

In 1950 Magann conveyed the eastern portion of Lot No. 6 to O. L. Harcum, and in 1952 Harcum conveyed that parcel to plaintiff Pearson. Pearson constructed a building with a large overhead door fronting on the 25-foot strip, and he has used the strip for access to the building.

In 1950 Magann conveyed the western portion of Lot No. 6 to James E. Twilley, who subsequently conveyed that parcel to defendant Strickland Brothers. The Stricklands, who did not testify in this suit, have apparently leased the 25-foot strip from defendant Smith and desire to fence-off the strip. See the 1947 map, p. 440 *supra.*

Aided by the parol evidence, the trial court decided that the easement granted to Barnes's and Pearson's predecessor in title, Magann, included the right to use the 25-foot strip for access to Magann's property. We hold that the evidence supports this conclusion.

---

[6] Magann could not have built the warehouse with the expectation that access thereto could be gained by using the 16-foot alley shown on the 1947 map reproduced above, because that alley was provided for after Magann acquired Lot No. 6.

The deed from James L. Smith to A. G. Pinkston, pp. 442-43 *supra*, reflected Smith's original intention respecting the use of the 25-foot strip. That deed clearly evidenced Smith's intention to reserve the 25-foot strip, marked "Reserved for future R.R. Siding", for use by owners of the lots shown on the 1945 plat as a means of access to their properties. Subsequent deeds evidenced no contrary intention; rather, they may be reasonably interpreted as conveying the same easements conveyed under the Pinkston deed.

Furthermore, the practical construction of the Magann deed and the 1945 plat supports the trial judge's conclusion. James L. Smith advised plaintiff Barnes that he could use the strip for access to his property, and that the construction of any railroad siding in the future would not interfere with Barnes's use of the strip for vehicular access to his property.

Moreover, on a plat attached to a 1947 deed of correction between James L. Smith and O. L. Harcum, the 25-foot strip was identified not only as "Reserved for future R.R. Siding", but also as "Columbia St. extended".[7]

Magann's actions evidenced a similar construction of the deed from James L. Smith to Magann. Relying on the easement, Magann constructed a building fronting on the 25-foot strip and used the strip for access to the building. James L. Smith never objected to Magann's use of the strip or to Barnes's and Pearson's subsequent use of the strip for access to their properties. Defendant Smith did not object until 1965, about six years after he acquired the property formerly owned by his father.

"The language of the deed . . . and the construction placed thereon and acted upon by the grantees, and acquiesced in by the grantor for many years must determine the rights of the parties to this suit." *Hostetter* v. *Hitchings*, 119 Va. 131, 134, 89 S.E. 135, 136 (1916).

The deed to Magann granted him the right to use a railroad siding, if a siding were constructed, and the right to use the 25-foot strip for access to such a siding. Magann's effective use of such a siding would depend upon his right to move goods received by rail to his property and thence to their ultimate destination. And Magann's effective use would depend upon his further right to move goods to be shipped by rail to his property and thence to cars on the siding. Therefore, the grant of the right to use a railroad siding impliedly included the right

---

[7] This plat is the "Harcum plat" referred to p. 445 *infra*.

to use the 25-foot strip for access to Magann's property after a siding was constructed.

To sustain the defendants' interpretation of the grant would necessitate a finding that even though Magann was granted the right to use the strip for access to his property after a railroad siding was constructed, he was granted no right of access pending construction of a siding. Neither the language of the documents nor the actions of the parties dictate such an interpretation.

Therefore, we will not disturb the trial court's finding that Magann was granted an easement across the strip for ingress and egress, whether or not a railroad siding was constructed. "Where . . . the meaning of a writing is uncertain or ambiguous and parol evidence is introduced in aid of its interpretation, the question of its meaning should be left to the . . . [trier of fact]". *Portsmouth Gas Co.* v. *Shebar*, 209 Va. 250, 258, 163 S.E.2d 205, 211 (1968), quoting from 4 *Williston, Contracts* § 616, at 652 (3d ed. 1961).

Next, we must consider the right of plaintiff Miniard to use the 25-foot strip. Miniard's lot is located near the southwest corner of the 1947 map, reproduced p. 440 *supra*. His lot is not part of the property shown on the 1945 plat (reproduced p. 441 *supra*) and conveyed to James L. Smith by the Railroad Receivers, but part of a tract subsequently acquired by James L. Smith.

In 1948 James L. Smith conveyed this lot to Clarence L. Taylor, Miniard's predecessor in title. The deed from Smith to Taylor recited: "This deed is made subject to the easements and reservations shown on said plat".

The "said plat" referred to in the deed is a plat dated March 14, 1947 recorded with a deed of correction between James L. Smith and O. L. Harcum. The Harcum plat showed the same 25-foot strip, marked "Reserved for future R.R. Siding", as shown on the 1945 plat reproduced above.[8] So like the 1946 deed to Magann, the 1948 deed to Taylor conveyed an easement by referring to a plat showing the 25-foot strip marked "Reserved for future R.R. Siding". The Taylor deed, then, presents the same question presented by the Magann deed: What easement or right of way across the 25-foot strip was intended by the words "Reserved for future R.R. Siding"?

Parol evidence being admissible to resolve the ambiguity in the Magann deed, parol evidence was admissible to resolve the ambiguity

---

[8] The Harcum plat is substantially the same as the 1947 map. See n. 2 *supra*. The deed of correction relates to Lots 4 and 5 shown on the 1945 plat.

in the Taylor deed. And since James L. Smith must have ascribed the same meaning to "Reserved for future R.R. Siding" in 1948 as he ascribed to those words in 1946, the evidence that supports the trial court's finding that Smith intended to grant Magann an easement for ingress and egress also supports the court's finding that Smith intended. to grant Taylor an easement for ingress and egress.

The trial court's decree is erroneous, however, in one respect. The plaintiffs relied upon an express grant of an easement for ingress and egress across the 25-foot strip "Reserved for future R.R. Siding" shown on the 1945 plat and the Harcum plat. Those plats show that the 25-foot strip extended no farther west than the western boundary of Lot No. 6 on the 1945 plat. Nevertheless, the decree describes the 25-foot strip as continuing to the west along the southern boundary of plaintiff Miniard's lot, and upholds the plaintiffs' right to use the strip south of Miniard's lot.

No issue was raised and no evidence was introduced respecting the right of any plaintiff to use the strip south of Miniard's lot. (Presumably James L. Smith, Jr. owns the strip, but the record does not disclose that fact.) The decree must therefore be modified insofar as it adjudicates rights in that strip.

That modification affects only plaintiff Miniard because he cannot gain access to his lot from the 25-foot strip "Reserved for future R.R. Siding". See the 1947 map, p. 440 *supra*, which shows that the 25-foot strip and Miniard's lot have no common boundary. Miniard may have acquired, by express or implied grant, an easement to use abutting property to gain access to his lot from the 25-foot strip. That question, however, is outside the scope of this suit.

We affirm the decree except insofar as it enjoins the defendants from obstructing or interfering with the plaintiffs' use of the strip south of plaintiff Miniard's property, and remand the case with direction that the decree be modified in that regard.

*Modified, affirmed, and remanded.*