# CIRCUIT COURT OF BOTETOURT COUNTY

Chelsea Wimmer
and Jacob Wimmer

v.

R&R Joint Venture, Inc., *et al.*

May 7, 2016

Case No. CL 14-412

BY JUDGE ROBERT P. DOHERTY, JR.

Plaintiffs, husband and wife purchasers of residential real estate in the Hunter's Green subdivision in Botetourt County, bought their home from the previous residents in December 2013. The previous residents had purchased the home from the builder in 1997, who in turn bought the lot from the developer in 1996. The real estate is designated Lot 1, Section III, according to the Plat Map of "Hunter's Green" Subdivision, Section III, which plat map was duly recorded in the Botetourt County Circuit Court Clerk's Office, August 15, 1996. That lot is surrounded on the North and East by residential streets and on the South by State Route 654, also called Reed Mountain Road, a major thoroughfare in Botetourt County. The plat map of the subdivision also shows that a substantial portion of the Southeast corner of Plaintiff's lot is designated as a sign easement. A large stone monument containing a wooden sign with the words "Hunter's Green" carved into it was located in the sign easement area when Plaintiffs purchased the home.

Plaintiffs testified that they purchased the home without the assistance of a lawyer. The deed of purchase to the Plaintiffs describes their lot with reference to the recorded plat map and says that the conveyance is "expressly made subject to any and all recorded conditions, restrictions, and easements which may affect the title to the property hereinabove described." A notation on the deed is as follows: "NO TITLE EXAMINATION

HAS BEEN PERFORMED AND NO CERTIFICATION AS TO STATUS OF TITLE IS MADE BY ATTORNEY PREPARING THIS DEED."

A later title search revealed that the 1996 deed from the developer to the builder of the house on the lot was described as being "subject to a "Sign Easement" as shown on the aforesaid plat in Plat Book 17, at page 101. . . ." The next portion of the property description, after the derivative clause, was that "Grantor, as further evidenced by its signature hereto, agrees to be responsible for the periodic maintenance to maintain in its present condition said "Sign Easement" together with ingress and egress for repair and maintenance of same." That deed, together with the deed to Plaintiffs' grantors, was made "subject to all easements, conditions, restrictions, and reservations of record . . ." now affecting that real estate. In the recorded plat map of the subdivision, the owner declares that "all the easements are hereby dedicated for public use." The stone monument and sign in the sign easement area had been erected prior to this deed being executed and recorded.

In March of 2014, Plaintiffs determined that portions of the stone monument bearing the name of the subdivision had cracks in the mortar and contained some loose and unsecured rocks that were being held up by cinder blocks. Believing it to be unsafe, Plaintiffs began to dismantle the monument, removing some stone with their hands and some with the aid of a sledge hammer. They pulled the wooden sign off, stating that it was only held on by two nails. Their destruction had effectively removed the two wings from the stone monument and the sign itself. There was no corroboration of Plaintiffs' testimony that the stone monument was unsafe, although Defendant's masonry expert did testify that there were some cracks in the mortar in the remaining portion of the stone monument. Plaintiffs advertised on the social media Facebook for anyone who wanted free stone to come and remove it. Plaintiffs gave away two truck loads of the stone before counsel for some of the Defendants notified Plaintiffs by letter to cease and desist in the destruction of the sign, and that they were violating the sign ordinance. Thereafter, in April 2014, Plaintiffs put a six foot tall fence around their back yard that effectively blocked the sign and sign easement from being visible from the public highway and from at least one of the residential streets surrounding a part of their lot. Because the fence violated a Botetourt County fence ordinance, a portion of the fence that bordering one side of their back yard had to be reduced in size to four feet tall.

In June 2014, Plaintiffs filed this chancery cause against the dissolved corporate developer of the subdivision, claiming that the sign easement had been abandoned and that it constituted a cloud on their title and should be removed. Some property owners in the subdivision asked to intervene, which motion was ultimately granted, and all of the property owners in the subdivision were individually made defendants. Some are represented

by counsel and some are not. The original Defendant developer did not respond. Various pleadings, motions, claims, and counterclaims were made by the parties, resulting in Plaintiffs' also asking for a declaratory judgement that no sign easement was ever created. Two of the former officers in the dissolved development corporation were made defendants in their statutory capacity as trustees in liquidation. Somewhere in the course of all of this, Plaintiffs obtained a quit claim deed from one or more of the trustees in liquidation of the defunct development corporation, to whatever right, claim, title, interest, or reservation they may have retained in the sign easement.

After their responsive pleadings, some of the Defendant land owners filed a counterclaim asking for injunctive relief to prevent Plaintiffs from interfering with their rights in the sign easement. They also asked for a mandatory injunction to require Plaintiffs to remove the wooden fence that blocked their view of the sign easement area. Finally, they asked for a money judgement against Plaintiffs for the damage and destruction done to the stone monument and sign and for attorney's fees.

Plaintiff wife testified that they saw the sign before they purchased the property, but would never have bought the property if they thought that they would not be able to remove the sign. They did not have a survey of the property prepared and never saw the plat map. The first she knew of a possible easement was when they received the cease and desist letter from counsel for some of the subdivision landowners. She said that the wooden fence was erected to allow their dog to roam in their backyard and for their children to play there once they become old enough. Plaintiff husband testified he thought that they had the right to tear down the sign and monument. The Plaintiffs did not destroy the central portion of the sign monument, as was their stated intent, because the Court ordered that no further dismantling of the sign monument could occur during the course of this case.

Landowner Defendants and a landowner from another section of the subdivision testified that the sign and monument did not appear to be deteriorated to them, although they only viewed it from the road, and, in one instance, from Plaintiffs' front yard. They all indicated that it looked good and was used by them to give directions to their homes. They felt it was a landmark, and they wanted it back. Defendant's expert mason said that the way to repair the cracks in the stone monument was to dismantle it entirely and rebuild it. He said the cracks in the monument were from weathering, and that it would cost approximately $3,500.00 to rebuild it, which price included the missing stone.

## Easement

The plat map of "Hunter's Green" Subdivision Section III, recorded in the Clerk's Office of the Botetourt County Circuit Court on August 15, 1996, at Plat Book 17, pages 101 and 102, clearly shows the existence of a sign easement drawn onto the .51 acre tract designated Lot 1, the real estate in question. The dedication portion of that recorded plat contains the following language: "THE SAID OWNER DOES BY VIRTUE OF RECORDATION OF THIS PLAT, DEDICATE IN FEE SIMPLE TO THE COUNTY OF BOTETOURT ALL THE LAND EMBRACED WITHIN THE STREETS OF THIS SUBDIVISION AND ALL THE EASEMENTS ARE HEREBY DEDICATED FOR PUBLIC USE." Thereafter, by deed dated October 16, 1996, and recorded on October 18, 1996, in Deed Book 516, Page 273, in the Clerk's Office aforesaid, the subject real estate was transferred from R&R Joint Venture, Inc., a Virginia corporation, Grantor, to D&P Builders, Inc., Grantee. That deed described the land by lot and section number "and as recorded in the Circuit Court Clerk's office for Botetourt County, Virginia, in Plat Book 17, at page 101; and Subject to a "Sign Easement" as shown on the aforesaid plat in Plat Book 17, at page 101. . . ."

The specific language of this deed, which the Court incorporates by reference into this letter opinion, is similar to the deed and plat the Virginia Supreme Court confronted in the case of *Strickland v. Barnes*, 209 Va. 438, 164 S.E.2d 768 (1968), which case was referenced and so clearly explained in *Burdette v. Brush Mountain Estates, L.L.C.*, 278 Va. 286, 297-97, 682 S.E.2d 549 (2009). There, the finding was that, when language is used in a deed subjecting a conveyance to a particular easement of record as shown on a specific plat, those become "words of conveyance." In this instance, the intent of the Grantor of the subject real estate to Plaintiff's predecessor in title is clear. The sign easement plainly marked on the plat of Plaintiffs' real estate, and its dedication for public use, became an encumbrance on Plaintiffs' land. The sign easement is an express easement that runs with the land. See also *Anderson v. Edwards*, 37 Va. Cir. 52 (1995), where Judge Horne in Loudoun County reached a similar result under similar facts.

Having determined that the sign easement was properly created and that it came into being as an express easement, the remaining arguments and counter argument of the parties concerning other theories of the creation or failure to create a sign easement become moot. No decision will be made on those contentions. Short of abandonment of the easement, its efficacy continues.

## Abandonment of Easement

Plaintiffs argue in the alternative that, if a sign easement exists, it has been abandoned. This argument is based on the failure of anyone to repair or maintain the sign monument. Other than Plaintiffs' uncorroborated evidence that the sign monument was unsafe and their corroborated testimony that

cracks were appearing in it, there was no evidence of abandonment of the sign easement. On the contrary, witnesses for Defendants testified that they continued to use the sign as a reference point to help visitors locate their address until Plaintiffs destroyed the sign. A party claiming the abandonment of an easement must prove the dominant estate intended to abandon the easement by clear and unequivocal evidence. *Watts v. C. I. Johnson & Bowman Real Estate Corp.*, 105 Va. 519, 525, 54 S.E. 317 (1906). That was not done in this case. There were no acts proven that manifested an intent to abandon the easement. Plaintiffs' destruction of the sign monument cannot be considered on the question of abandonment, as it was not acquiesced in by the owner of the dominant estate at all, much less for a period sufficient to create a prescriptive right. See *Pizzarelle v. Dempsey, III*, 259 Va. 521, 526 S.E.2d 260 (2000). Accordingly, the Court finds that the sign easement was not abandoned.

### Violation of Sign Easement

The evidence is clear and convincing. Plaintiffs have violated the sign easement. They did so when they took down the sign and destroyed a large portion of the sign monument. They also did so when they erected a fence preventing public viewing of the sign and/or the sign easement area.

### Remaining Issues

"Usually, when a court of equity has acquired jurisdiction of a cause, it will retain it for all purposes and administer full relief." *Stevens v. Sparks*, 205 Va. 128, 134, 135 S.E.2d 140 (1964). In this case, the administration of complete relief requires the determination of a metes and bounds description of the sign easement so that a clear mandatory injunction order can be entered and enforced, requiring the relocation of a portion of Plaintiffs' fence and delineating its location so that it does not interfere with the public's view of the subdivision sign. The administration of complete relief seems also to require inquiry into whether or not R&R Joint Venture, Inc., the dissolved corporation that was the developer of the subdivision and had promised by deed to maintain the sign easement, had sufficient assets upon its dissolution to keep its promise, and if so, what happened to those assets. That necessitates the joining in this case of all the former officers of the corporation as trustees in liquidation and the taking of some evidence. After that, the Court would be in a position to determine what, if any, money judgment should be rendered against Plaintiffs for the destruction of the subdivision sign. Additionally, the question of attorney's fees needs to be addressed.

The parties should contact the Court's Judicial Assistant to schedule a hearing to determine how to proceed on the above listed remaining issues.

The Court will at that time also consider suggestions by counsel concerning any other issues that require resolution in order to grant complete relief.