COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Fulton
Argued at Alexandria, Virginia

UNPUBLISHED

BECKER BUILDING COMPANY, LLC, ET AL.

                                                MEMORANDUM OPINION[*] BY
v.       Record No. 1865-23-4              JUDGE MARY GRACE O'BRIEN
                                                 APRIL 1, 2025

SCOTT W. KELLER, ET AL.

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Douglas L. Fleming, Jr., Judge[1]

Meredith L. Yoder (Trevor B. Reid; Parker, Pollard, Wilton &
Peaden, P.C., on briefs), for appellants.

Stephen C. Price (Theresa D. Small; McCandlish & Lillard, P.C., on
brief), for appellees.

Appellant Becker Building Company, LLC ("Becker") is the fee simple owner of three

parcels of real property located near U.S. Route 50 in Fauquier County (the "Becker

Properties").[2] Appellees Scott and Belinda Keller (collectively "the Kellers'') are the fee simple

owners of a single parcel (the "Keller Property") adjoining the Becker Properties. The Becker

Properties are connected to Route 50 via a private road traversing the eastern edge of the Keller

Property. The Kellers filed a complaint for a declaratory judgment that Becker's right to use the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Designate Dennis L. Hupp presided at oral argument in the circuit court and authored the opinion letter delivering the circuit court's judgment. Judge Douglas L. Fleming, Jr. entered the order granting partial summary judgment to appellees Scott W. Keller, et al. and denying it to appellants Becker Building Co., LLC, et al. and entered the final order in the case.

[2] Co-appellant United Bank is Becker's real estate finance lender and claims purchase money deed of trust liens on each of the Becker Properties. We refer to the appellants collectively as "Becker."

private road was extinguished under the doctrine of merger when a third party previously held title to the Keller and Becker Properties simultaneously. The circuit court granted summary judgment in favor of the Kellers. For the reasons that follow, we reverse the circuit court's judgment.

BACKGROUND

A. The Real Estate Transactions

In early 1976, John and Charlotte Rhodes ("Rhodes") and Uta Kirchner-Emberger ("Emberger") owned neighboring parcels fronting on U.S. Route 50, also known as John S. Mosby Highway, with the Rhodes parcel on the west and the Emberger parcel to the east. *See* Figure A.[3]



Figure A

---

[3] The figures are adapted from Becker's opening brief, which the Kellers generally accepted subject to "further explanation and repetition."

In August of that year, the Rhodeses subdivided their parcel and sold the southernmost ten acres to John S. Cowne, Jr. and Regina S. Cowne ("Cowne"). Because the newly created Cowne parcel did not have road frontage, the Rhodeses granted an express easement of 50 feet for ingress and egress over their remaining parcel to allow access to Route 50 (the "1976 Express Easement"). The 1976 Express Easement was described in the deed conveying the Cowne parcel and was depicted on a plat incorporated into and recorded with the deed. *See* Figure B.



Figure B

In 1982, the Rhodeses subdivided their remaining parcel, conveying a 10-acre portion to their son and daughter-in-law ("Rhodes 2nd Generation")[4] and granting them an express 50-foot easement for access to Route 50 (the "1982 Express Easement").[5]  *See* Figure C.



Figure C

---

[4] The Rhodes 2nd Generation parcel would later become one of the three parcels owned by Becker (herein referred to as "Becker Lot 3" but known below as the Becker 10ac parcel) originally at issue in this litigation.  However, the parties resolved their dispute as to Becker's right of access to Route 50 for that parcel, and it is no longer at issue in this case.

[5] The Kellers claim, and the figures depict, that the 1976 and 1982 Express Easements were coincident and traversed what is now the Keller property.  However, a 1983 plat—attached to the Kellers' amended complaint—depicts the easements as separate and running parallel; it labels the strip of land for the 1976 Express Easement as part of the Cowne parcel.  To the extent the record reflects a factual dispute over the location and/or ownership of these easements, it is immaterial, given our holding that the merger doctrine does not apply.

In September 2004, Emberger acquired the remaining portion of the Rhodes parcel fronting on Route 50. *See* Figure D. The Cowne and Rhodes 2nd Generation parcels retained access to Route 50 via the previously mentioned easements.



Figure D

In 2007, Emberger created a small subdivision, forming two new parcels taken from her original parcel along the eastern side of the ingress and egress easements described above. *See* Figure E. In compliance with local zoning ordinances, Emberger recorded separate subdivision plats for each new parcel and granted Fauquier County an express "private street easement" for "public emergency and maintenance." The subdivision plats depict the private street as running across the Emberger parcel that had originally belonged to the Rhodeses; the private street appears to coincide with the ingress-egress easements created by the Rhodeses.



In January 2009, Emberger conveyed the former Rhodes parcel on the west side of the private road to John Copanos by deed. The deed provided that it was "subject to easements, utility restrictions, and rights-of-way of record" and included a boundary survey that depicted the private road serving Emberger's subdivision. Between July 2016 and August 2017, Easton & Porter Group, LLC ("Easton & Porter") acquired the Copanos property, all Emberger holdings, and the Rhodes 2nd Generation parcel, holding fee simple title to all of the properties together beginning on August 2, 2017. *See* Figure F.



Easton & Porter's business plans changed, however, and between June 17 and December 28, 2021, it sold all of these parcels. Becker purchased the two parcels created by Emberger's subdivision ("Becker Lots 1 and 2") as well as the Rhodes 2nd Generation parcel ("Becker Lot 3"). The Kellers acquired the Emberger parcel that had originally belonged to the Rhodeses. The Kellers' deed stated that conveyance was "subject to easements" including the "private street easement" granted to Fauquier County in 2007 when Emberger created the subdivision. A third party, Diamond Back Investment, purchased the rest of the original Emberger parcel. *See* Figure G.



Figure G

B. Proceedings in the Circuit Court

The Kellers brought a declaratory judgment action against Becker, asserting that any "easements established for the benefit of . . . [Becker] Lots 1 and 2 . . . were extinguished by the doctrine of merger when Easton & Porter Group, LLC acquired [simultaneous] ownership of the Keller Property . . . and [Becker] Lots 1 and 2."[6] Becker filed a counterclaim, and both parties filed cross motions for partial summary judgment.

Relying on our Supreme Court's line of cases including *Ryder v. Petrea*, 243 Va. 421 (1992), *Lindsay v. James*, 188 Va. 646 (1949), and *Sipe v. Alley*, 117 Va. 819 (1915), Becker

---

[6] The Kellers' complaint also made similar allegations concerning Becker Lot 3, but because the parties resolved their dispute with respect to that parcel while the matter was still in the circuit court, we address only Becker Lots 1 and 2.

argued that the merger doctrine does not apply to rights-of-way "created by a recorded subdivision plat" and therefore did not extinguish its right to use the private road.[7] The Kellers responded that this line of cases is distinguishable and that "[t]he principle underlying the merger doctrine clearly mandates its application" to the private road in question.

The court granted the Kellers' motion for partial summary judgment, holding that any easement over the private road had "extinguished by operation of law through merger of the dominant and servient estates [when] Easton & Porter acquired title to all tracts." It enjoined Becker from using the private road to access Becker Lots 1 and 2 from Route 50, and it entered a final order noting that the parties had "reached a consensus" on all outstanding issues.

ANALYSIS

On appeal, Becker argues the court erred in determining that its right to access Route 50 via the private road was "susceptible to extinguishment via the doctrine of merger."[8] Becker asserts the existence of a durable "private easement of passage[]" in the private road by virtue of it being "shown on [the] subdivision plat[s]" by which Becker Lots 1 and 2 were created. *Ryder v. Petrea*, 243 Va. 421, 423 (1992). We agree.

A. Private Easements

Our review of the judgment below requires surveying the case law governing what the *Ryder* Court called "private easement[s]." *Id.* It has long been Virginia law that "[w]hen lands are laid off into lots, streets[,] and alleys," and a plat showing them is recorded, "all lots sold and

---

[7] Because we resolve this appeal on the basis of this question, we do not reach the other arguments Becker raised in the circuit court.

[8] Becker brings five assignments of error for our consideration. However, "[w]e decide cases 'on the best and narrowest grounds available.'" *Frederick Cnty. v. Va. Dep't of the Treasury*, 81 Va. App. 102, 109 n.3 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). Because "the best and narrowest ground is whether" Becker's right to use the private road was extinguished by operation of the doctrine of merger, we decide the case on that basis and therefore do not reach Becker's other assignments of error. *Id.*

conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of the easement in such streets . . . necessary to the enjoyment and value of said lots." *Sipe v. Alley*, 117 Va. 819, 822 (1915). In *Sipe*, the defendant, acting on an agreement with another landowner in the subdivision, closed a street appearing on the subdivision plat when a path was opened through the latter's lot, thereby giving all other lot owners an alternative outlet to the closed street. *Id.* at 820-21. The Supreme Court ruled this impermissible: the "agreement and the subsequent controversy growing out of it are not material considerations," the Court wrote, because it was "clear that the parties thereto had no power or authority to close the street in question against all other owners of lots derived" from the plat. *Id.* at 821.

The Court affirmed this principle in *Fugate v. Carter*, 151 Va. 108 (1928). In that case, a property owner built a garage obstructing an alley, which was depicted in the town's plan recorded in the county records. *Id.* at 111. Another lot owner sought an injunction to have the garage removed, which the trial court denied. *Id.* The Supreme Court reversed. *Id.* at 116. "There are many cases which hold that a lot owner who purchases under a recorded plat takes as appurtenant to his lot the right to the use of all of the streets and alleys there shown," the Court stated. *Id.* at 114. "[With respect to] the original owner, the recordation of the plat is a dedication of these highways which neither he nor those who claim under him can question." *Id.* This rule is "*based upon no covenants, but grow[s] out of the doctrine of estoppel*, and so [is] written by equity into each contract of sale." *Id.* (emphasis added). This rule applied even though "no evidence show[ed] that [the alley] was ever open." *Id.* at 111.

The Court revisited the principle in *Walters v. Smith*, 186 Va. 159 (1947). There, a group of landowners had divided a parcel into lots, streets, and alleys in 1922; the subdivision was documented in a recorded plat. *Id.* at 161. In 1944, the owner of two lots on either side of an alley blocked it, intending to construct a building across it. *Id.* at 167. Dorothy Smith, another lot owner,

sued to remove the obstruction. *Id.* at 168. The trial court ruled in Smith's favor, and the Supreme Court affirmed. *Id.* at 168-69, 173. "It is a settled rule," the Court wrote, "that when land is granted [and] described as bounding on a way[,] it is an implied covenant that there is such a way; that so far as the grantor is concerned, it shall be continued, and that the grantee and his heirs and assigns shall have the benefit of it." *Id.* at 170 (quoting *Gish v. Roanoke*, 119 Va. 519, 531 (1916)). When the original subdividers "recorded [the] plat and sold the lots designated thereon to individuals by reference to such plat, the grantees . . . and all persons claiming under them acquired vested easements in all the streets and alleys laid out and designated on the plat." *Id.* at 171 (quoting *Sipe*, 117 Va. at 823).

A similar issue arose in *Strickland v. Barnes*, 209 Va. 438 (1968). That case involved a dispute over access to a 25-foot strip of land fronting various lots and used by the owners for ingress and egress. *Id.* at 439-40. The strip appeared in a recorded 1945 plat with the description "[r]eserved for future R[ail] R[oad] siding." *Id.* at 439. The railroad siding was never built. *Id.* at 442-43. Years later, the owner of the property containing the 25-foot strip sought to fence it in, arguing that the other lot owners (the plaintiffs) had only an easement for use of the railroad siding, if it was ever built. *Id.* at 439. The plaintiffs opposed construction of the fence, and the Court ruled in their favor. *Id.* 439, 443-44. Although the plat itself merely stated that the 25-foot strip was "[r]eserved for [a] future R[ail] R[oad] siding," the original subdivider's deed conveyed the relevant parcels "subject to the easements for ingress and egress shown on . . . [the 1945 plat], including . . . a strip on the rear marked 'reserved for future railroad siding', which easements are for the use of all property owners on said plat." *Id.* at 442-43. Moreover, "[a]ll subsequent deeds introduced in evidence conveying lots shown on the 1945 plat provided that they were conveyed 'subject to the easements and restrictions shown on said plat.'" *Id.* at 443. On the strength of these provisions, and testimony adduced at trial, the Court ruled that the plaintiffs had a right to use the 25-foot strip for

ingress and egress, notwithstanding the specification that it was marked on the plat as reserved for a railroad siding. *Id.* at 439, 446.

The Court next adjudicated such a claim in *Ryder*. 243 Va. at 421-24. There, the owner of two subdivision lots sought "a private right of easement" over a 50-foot right-of-way abutting his property, as depicted on a subdivision plat recorded in 1949. *Id.* at 422-23. The subdivider's successor-in-interest countered that the lot owner had no right to use the right-of-way because his lots abutted a public road. *Id.* at 423. The trial court agreed with the latter position, but the Supreme Court reversed. *Id.* at 423-24. "[A]s to the extent of the easement in the streets and alleys created by grant with reference to a map or plat," the Court held, a private right of easement exists in "such streets and alleys shown on the plat as are reasonably beneficial to the grantee, and a deprivation of which would reduce the value of his lot." *Id.* at 424 (quoting *Lindsay v. James*, 188 Va. 646, 653 (1949)). "In any event," the Court continued, "such grantee is entitled to an easement in streets and alleys *adjoining* his lot" irrespective of whether the streets conferred a benefit on the impacted lots. *Id.* (emphasis added) (quoting *Lindsay*, 188 Va. at 653).

Becker's claimed easement is a "private right of easement" of the kind upheld in *Ryder*, *Lindsay*, and their predecessors. Becker Lots 1 and 2 were created by duly recorded plats in 2007. The private road was clearly marked on each plat, running on a track coincident with the easements previously granted by the Rhodeses.

Those cases that appear to reach a different conclusion are distinguishable. In *Burdette v. Brush Mountain Estates, LLC*, 278 Va. 286, 291-99 (2009), the Supreme Court considered whether a private easement for ingress, egress, and public utility existed for the benefit of a neighboring parcel. The Court found that it did not, distinguishing that case from prior precedent by noting that language in the relevant deeds in *Burdette* "fail[ed] to mention a specific easement or plat" to which the servient estate was subject, so that one "could not glean any information about the extent of the

- 12 -

burden imposed on the servient estate." *Id.* at 296-97. This is not so in the present case. Also distinguishable is the Supreme Court's rejection of an easement claim in *Beach v. Turim*, 287 Va. 223 (2014). In that case, the Court considered whether "owners of a lot in a subdivision held an *express* easement" to use a private walk at the rear of certain subdivision lots. *Id.* at 225-26 (emphasis added). As in *Burdette*, the *Beach* Court found the easement was insufficiently described in the relevant land records. "The deed . . . does not state to whom the easement is granted," the Court observed, also noting that "the purpose of the easement [wa]s, at best, ambiguous." *Id.* at 229. Here, by contrast, both the purpose and the beneficiaries of the easement are abundantly clear. Furthermore, as the Supreme Court observed in *Fugate*, private easements like those at issue here arise by estoppel. 151 Va. at 114. But the *Beach* Court made clear that the one issue before it was "limited to whether the Turims have an *express*" easement to use the walk. *Beach*, 287 Va. at 228, 230 (emphasis added). The Court stated that "*Ryder* and *Lindsay*," precedents controlling here, were "simply not applicable to whether an *express* easement is created in the instrument of conveyance." *Id.* at 230. *Beach* is, therefore, not controlling. *See also Bodak v. Mayne*, No. 160241, slip op. at 3-4, 2016 Va. Unpub. LEXIS 28, at *5-6 (Va. Dec. 8, 2016) (distinguishing between express easements and private easements).[9]

### B. Inapplicable Merger Doctrine

The court ruled that any easement claimed by Becker had extinguished under the doctrine of merger, when Easton & Porter acquired title to Becker Lots 1 and 2 and the Keller Property. The doctrine of merger provides that easements may be "extinguished by operation of law if the *seisin* [i.e., ownership] of the dominant and servient tenements becomes united in one and the same person." *Read v. Jones*, 152 Va. 226, 231 (1929) (quoting John Leybourn Goddard, *A*

---

[9] "Unpublished opinions may be cited 'as informative[.]'" *Abanda v. Commonwealth*, 81 Va. App. 354, 362 n.1 (2024) (quoting Rule 5A:1(f)).

*Treatise on the Law of Easements* 457 (1880)).[10]  Becker argues the court erred in applying the merger doctrine to its private right of easement.  We agree; Virginia courts have enforced these easements in cases where the doctrine of merger would otherwise apply.

Although it did not expressly address the doctrine of merger, *Lindsay* is instructive on this point.  In that case, Martha Masury created a property subdivision in 1926 called Ubermeer. *Lindsay*, 188 Va. at 648-49.  The recorded subdivision plat showed that Ubermeer consisted of 16 blocks divided into 475 lots, with designated streets, alleys, and ways.  *Id.* at 649.  The Roymar Corporation acquired blocks six and seven and then conveyed block seven to Elizabeth James.  *Id.* James's lots were adjacent to a "[20]-foot [w]ay" shown on the plat.  *Id.*  In 1936, Roymar sold all lots in block six to the Surf Beach Club.  *Id.*  The Surf Beach Club then erected buildings obstructing the 20-foot way.  *Id.* at 650-51.  James sued the Surf Beach Club's successors-in-interest, Katherine Lindsay and Pretlow Darden ("Lindsay"), for removal of the obstruction.  *Id.* at 651.  Lindsay defended on the ground that removal of the obstruction was not "reasonably necessary for" James's use of her lots.  *Id.* at 653.  The Supreme Court disagreed and found in favor of James, despite the fact that she had "acquiesced in the obstruction of the [20]-foot way for a period of ten years" and the plat clearly showed that her lots could still access the adjoining thoroughfares.  *Id.* at 658, 660-61.  Summarizing the applicable law, the Court observed that "[w]hen land is subdivided into lots, streets and alleys, and lots are sold and conveyed by reference to the plat, without reservation, the conveyances carry with them the right to the use of such streets and alleys as may be necessary to the enjoyment and value of said lots."  *Id.* at 656.  If a private easement could be destroyed merely by operation of the merger doctrine, then James's rights to the use of the 20-foot way would have been extinguished when Roymar acquired all of the lots

---

[10] "Seisin" is defined as "[p]ossession of a freehold estate in land; ownership."  *Seisin*, *Black's Law Dictionary* (12th ed. 2024).

subsequently conveyed to James and the Surf Beach Club from Masury. That Lindsay did not resort to the merger doctrine, and that no similar case has been resolved on the basis of that doctrine, is a testament to the strength of the principle that "[l]ot owners are presumed to be interested in all streets and alleys shown on the recorded plat in which their lots are located." *Id.* at 656 (quoting *Fugate*, 151 Va. at 116).

The Kellers resist this conclusion, however, arguing that the present case does not meet the requirements of *Lindsay*. "[T]he lots" in *Lindsay*, the Kellers assert, "were described in the conveyances to the respective parties by reference, without reservation, to a recorded plat of the same subdivision," *id.* at 657, while the Kellers took their parcel via a deed that, they argue, does not refer to a recorded plat of the same subdivision as Becker's two lots. We are unpersuaded. The Kellers' deed stated that the conveyance was "subject to easements," specifically including the "private street easement" granted to Fauquier County in 2007. Fauquier County's deed of easement, in turn, expressly referenced "the private street *in this subdivision*" (emphasis added) and provided that "[t]his private street easement is hereby made part of" properties that would later become the Keller Property and Becker Lots 1 and 2. Moreover, Fauquier County's deed of easement referenced a 2007 plat—recorded when the subdivision was created—that not only identified (what became) the Keller Property but also depicted the private street running along its eastern edge. The private street is also depicted in a boundary survey referenced in deeds conveying the property to John Copanos in 2009; Easton & Porter in 2016; and, finally, to the Kellers in 2021. Thus, the record shows that "[t]he [Kellers] had full knowledge, actual and constructive, of [Becker]'s claim to a free use and enjoyment of the [private street] before they obstructed it." *Walters*, 186 Va. at 173.

C. Virginia Property Owners' Association Act

To support their position that the merger doctrine applies, the Kellers rely on the Virginia Property Owners' Association Act (POA), Code §§ 55.1-1800 to -1837. Specifically, they point to Code § 55.1-1830(E), which provides that "[t]he rule of property law known as the doctrine of merger shall not apply to any easement included in or granted pursuant to a right reserved in a declaration." According to the Kellers, by specifically exempting POA subdivisions from the merger doctrine, the General Assembly intended for the doctrine to apply to non-POA subdivisions, like the one here.

We disagree. Legislative enactments do not merely abrogate the common law. "[S]tatutes often *codify or otherwise incorporate* common law doctrines" as well. *Scholes v. Lambirth Trucking Co.*, 8 Cal. 5th 1094, 1110 (2020) (emphasis added) (citing *Stokeling v. United States*, 586 U.S. 73, 79-80 (2019)). Plainly, this is what the General Assembly did when it enacted Code § 55.1-1830(E). That provision is entirely consistent with the long chain of precedents discussed above stretching back more than a century. And it does not follow that, having incorporated the relevant common law principles into the POA, the General Assembly abrogated them with respect to subdivisions not governed by the POA, merely by not enacting a similar provision exempting non-POA subdivisions from the doctrine of merger as well. "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Stokeling*, 586 U.S. at 80 (alteration in original) (quoting *Hall v. Hall*, 584 U.S. 59, 73 (2018)). "When the legislature codifies a common-law rule, it adopts the exceptions and interpretations from the common law." *Chevron USA Inc. v. Aker Mar. Inc.*, 604 F.3d 888, 895 (5th Cir. 2010). To that end, "the best construction of the statute is[] to construe it as near to the reason of the common law as may be." *Wicks v. Charlottesville*, 215 Va. 274, 276 (1974) (quoting *Chichester v. Vass*, 5 Va. (1 Call) 83, 102 (1797)). Absent some firm indication to the contrary, the General Assembly's

*incorporation* of the common law governing private rights of easement into the POA does not *abrogate* the common law in other contexts. "The common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended." *Poole v. Commonwealth*, 73 Va. App. 357, 366 (2021) (quoting *Boyd v. Commonwealth*, 236 Va. 346, 349 (1988)). No such intention is in evidence here.

## CONCLUSION

For the foregoing reasons, the circuit court erred in applying the merger doctrine to Becker's private easement right. Therefore, the circuit court's judgment is reversed, and we remand to the circuit court for further proceedings that are consistent with this opinion.

*Reversed and remanded.*